## State, ex rel. Ketcham, *v.* Terre Haute & Indianapolis Railroad Company.

[No. 20,660.    Filed May 29, 1906.]

1. **Appeal and Error.**—*Decisions of Federal Supreme Court.— Binding Force.*—The decision of the United States Supreme Court in a cause taken by writ of error from the Supreme Court of Indiana is binding on such Indiana court.    p. 581.

2. **Statutes.**—*Construction.—Railroads.—Contracts.*—The act of 1847 (Local Laws 1847, p. 77), creating the corporation, the Terre Haute & Richmond Railroad Company, afterwards changed to the Terre Haute & Indianapolis Railroad Company, and providing that after payment of the original cost and ten per cent dividends on the investment per annum the legislature should have the right to regulate the toll, and that all net profits above fifteen per cent on the investment per annum should be paid to the State is permissive and discretionary, and requires regulation by the State as a condition precedent to recovery by the State.    p. 582.

3. **Estoppel.**—*Wrongful Acts.—Taking Advantage of.*—An evildoer will not be permitted to take advantage of his own fraudulent, corrupt or criminal conduct.    p. 582.

4. **Constitutional Law.**—*Legislative Action.—Fraud.—Bribery. —Railroads.*—Where legislative action is required to perfect the State's right to certain profits received by a railroad company (see Local Laws 1847, p. 77), courts will not hear and determine a charge of fraud and corruption of the legislature by such company to prevent or supply such action.    p. 583.

5. **Same.**—*Legislative Action.—Right of Court to Presume Character of.—Supplying of.*—The courts cannot presume what the character of legislative action would have been in the absence of alleged fraud and corruption of the legislature, and the courts cannot supply omitted legislation.    p. 584.

From Superior Court of Marion County (54,555); *Vinson Carter,* Judge.

Suit by the State of Indiana, on the relation of William A. Ketcham, as Attorney-General, against the Terre Haute & Indianapolis Railroad Company. From a decree for defendant, plaintiff appeals. *Affirmed.*

*William A. Ketcham, Roscoe O. Hawkins, Robert S. Taylor* and *Ferdinand Winter,* for appellant.

*John G. Williams, S. O. Pickens* and *Lawrence Maxwell, Jr.,* for appellee.

MONTGOMERY, J.—This suit was brought by the State, on the relation of its Attorney-General, against appellee, for an accounting and to recover, for the use of the common school fund, the net profits in excess of fifteen per cent per annum on the true cost of the construction of appellee's railroad, from the date when the total net earnings equaled such cost with ten per cent on the same added to January 17, 1873. A judgment for $913,905 in favor of the State was affirmed by this court. *Terre Haute, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 438. Upon a writ of error this judgment was reversed by the Supreme Court of the United States. *Terre Haute, etc., R. Co.* v. *Indiana* (1903), 194 U. S. 579, 24 Sup. Ct. 767, 48 L. Ed. 1124.

The cause was duly certified to the trial court with a mandate for further proceedings not inconsistent with the decision of the Supreme Court of the United States. Appellant thereupon filed an amended complaint, to which appellee demurred for want of facts. This demurrer was sustained, and appellant declining to plead further judgment was entered in favor of appellee. The correctness of that ruling is the only question presented for our decision.

The judgment of the Federal Supreme Court so far as it construed the statutes involved and determined the rights of the parties is binding upon us. The

1. opinion of that court declares that the right, in the contingency named, reserved by the State to regu-

582    SUPREME COURT OF INDIANA,

State, *ex rel.*, *v.* Terre Haute, etc., R. Co.—166 Ind. 580.

late tolls, and to apportion profits between the company and the school fund, was not mandatory but merely permissive and discretionary, and the asserted liability to account for excessive profits was not absolute, but dependent upon prior legislative action. That court among other things said: "The corporation was allowed to make and to distribute or retain such earnings as it could, subject to the power of the state in certain events to require it to pay over extra profits, or to sell its stock. But which, and whether the State would make either demand, was left undecided, and until the State elected the whole earnings of the company were its own. It follows that when the company surrendered its charter in 1873, there having been no attempt by the State to regulate tolls before that time, the company was free from liability or the possibility of demand."

The basis of the cause of action, as pleaded in the amended complaint, is the same as in the original complaint. The Supreme Court of the United States having held that a regulation of tolls and a requirement that the excess, after such regulation, should be paid over for the use of the common schools was, by the contract when properly construed, a condition precedent to any right of recovery, and that the legislative acts of 1897 relating to this subject were invalid, to avoid the effect of this holding the amended complaint charges that the requisite legislative regulation and apportionment prior to January 17, 1873, was prevented by the publication of false reports, and by the fraudulent and corrupt acts of appellee in bribing a member of the senate and three members of the house during the session of the General Assembly of 1869.

It is conceded by appellant's learned counsel that the enactment of appropriate legislation is a condition precedent to the recovery of the money now demanded; but it is argued that appellee, by its fraudulent and corrupt acts, having prevented performance of such condition on the part

of the State, performance will be excused to the end that appellee may not be permitted to profit by its own wrong. The principle that an evildoer cannot take advantage of his own wrong and profit thereby, when properly invoked, is universally applied and one of the most salutary known to the courts. Broom's Legal Maxims, *275; *Riggs* v. *Palmer* (1889), 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. 819; *Ritter* v. *Mutual Life Ins. Co.* (1898), 169 U. S. 139, 156, 18 Sup. Ct. 300, 42 L. Ed. 693; *Bond* v. *Hopkins* (1802), 1 Sch. & Lef. 413; *Attorney-General* v. *Ansted* (1844), 12 M. & W. 520; *Singleton* v. *Williamson* (1861), 7 H. & N. 410; *Wonderly* v. *LaFayette County* (1899), 150 Mo. 635, 51 S. W. 745, 45 L. R. A. 386, 73 Am. St. 474; *Graver* v. *Faurot* (1896), 76 Fed. 257, 22 C. C. A. 156; *Pulteney* v. *Warren* (1801), 6 Ves. 73; *Angle* v. *Chicago, etc., R. Co.* (1894), 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55.

If appellant's right of recovery were absolute and for a specific or definitely ascertainable sum, and the only obstacle to the maintenance of the suit were the want

4. of a timely demand, the omission of which was due to the fraudulent and corrupt conduct of appellee as charged, no court would hear or heed the arguments of the wrongdoer or long withhold the administration of tardy justice. But under the law as already declared in this case, no part of the earnings of the company belonged to the school fund as a matter of right, and in the absence of legislative regulation such earnings were wholly the property of the appellee. It required the affirmative exercise of a legislative discretion, not only to afford a remedy, but to establish a property right. If within the limitations of appellee's charter, the legislature had elected to exercise its discretion and granted to the school fund a property right in the profits earned by appellee, it must have gone further and definitely apportioned the shares of such earnings. The judiciary, for constitutional reasons and upon grounds

584    SUPREME COURT OF INDIANA,

State, *ex rel.*, *v.* Terre Haute, etc., R. Co.—166 Ind. 580.

of public policy, have invariably declined to inquire into the motives which prompted the official acts of the legislature or of the executive; and courts will not hear and determine a charge of fraud and corruption to annul or to supply legislative action. *Wright* v. *Defrees* (1856), 8 Ind. 298, 302; *McCulloch* v. *State* (1859), 11 Ind. 424, 431; *Judah* v. *Trustees, etc.* (1861), 16 Ind. 56, 66; *Fletcher* v. *Peck* (1810), 6 Cranch *87, *130, 3 L. Ed. 162; *United States* v. *Old Settlers* (1893), 148 U. S. 427, 466, 13 Sup. Ct. 650, 37 L. Ed. 509; *United States* v. *Des Moines, etc., R. Co.* (1892), 142 U. S. 510, 543, 12 Sup. Ct. 308, 35 L. Ed. 1099; *New Orleans* v. *Warner* (1899), 175 U. S. 120, 145, 20 Sup. Ct. 44, 44 L. Ed. 96; Cooley, Const. Lim. (7th ed.), 257, 258.

It is insisted that a showing of the corrupt conduct of appellee alone will suffice to sustain this suit, and if this contention were true the charge in the amended complaint would be abundantly sufficient. We are unable to concur in this view of the case, but in our opinion something more is required to sustain this complaint. The essential facts can only be supplied by assuming that the General Assembly, except for its own corruption, would have regulated the earnings and profits of appellee, and apportioned a specific part thereof to the use of the common schools, and that its acts would have been duly approved by the Governor. The complaint does not contain such a declaration, for the reason that a good pleader could not rightly abandon the statement of facts, and indulge in pure speculation. In the absence of legislation requisite to found the right asserted, we cannot know that the legislature desired to act at all, and if so, we cannot divine what its action would have been; nor can we lawfully exercise a discretion lodged in another department of government, usurp legislative functions and now perform what we might conceive to have been the duty of a General Assembly, nearly forty years in the past.

No error was committed in sustaining appellee's demurrer to the amended complaint, and the judgment is affirmed.

Gillett and Monks, JJ., concur in result. Hadley, J., not voting.