STATE EX REL. CLINE ET AL. *v.* SCHRICKER, GOVERNOR, ET AL.

[No. 28,559. Filed November 22, 1949. Rehearing denied January 10, 1950.]

Gilkison, C. J., dissents with opinion.

Gilkison, J., dissents with opinion.

*Claude Cline,* of Huntington, for appellants.

*J. Emmett McManamon,* Attorney General, *Earl R. Cox,* Special Counsel, and *Thomas L. Webber,* Deputy Attorney General, for appellees.

EMMERT, J.—Appellants seek to challenge the validity of certain acts of the 86th Regular Session of the General Assembly. The complaint charged in substance that House Bills numbered 379 (Ch. 257), 380 (Ch. 232), 381 (Ch. 233), and 25 (Ch. 277), and also "fifteen or twenty other bills involving expenditures and activities of various units and functions of government," were invalid for the reason that they were each passed by the General Assembly after the hour of 12 o'clock midnight, Monday, March 7, 1949, which under § 29 of Article 4 of the constitution was the time of expiration of the regular session; that in fact the General Assembly did not adjourn *sine die* until 5:16 P.M. Central Standard Time on Wednesday, March 9, 1949, which was a period of more than 41 hours longer than the time fixed by the constitution for the regular session; that the General Assembly stopped the clocks and timepieces at 11:22 P.M. on March 7, 1949, and remained stopped until March 9, 1949. The complaint further states that the General Assembly by its officers and employees falsely and fraudulently made official entries in the journals showing the Assembly adjourned *sine die* at 11:59 P.M., March 7, 1949. It also charged that the presiding officers of each of the Houses falsely, fraudulently and wilfully attested and certified as to the genuineness and correctness of said bills as having been passed by the General Assembly; that the Secretary of State has accepted and filed in his office all of the questioned enactments as certified to him by the President of the Senate and Speaker of the House of the General Assembly; and that moneys of the state will be illegally

expended in accordance with these purported acts which will be a fraud on the taxpayers of the state.

The appellees filed an answer in abatement in two paragraphs. The first paragraph admitted that the journals and records of the House of Representatives and the Senate on their face show the Legislature adjourned within the term required by the constitution, and that the bills under attack were properly signed, attested and properly authenticated by the presiding officers of each House; that according to all the records said acts appear on their face to be duly enacted as required by the constitution, which is conclusive on the question as to validity of the enactment of said acts. The second paragraph in substance charges the action was in substance and truth a suit against the State of Indiana without its consent.

Appellants filed a demurrer to this designated answer in abatement, but the memorandum thereto made no objection that the matters therein pleaded should have been raised by demurrer. A demurrer to an answer in abatement on the ground that it does not state facts sufficient to abate the cause of action must be accompanied by a memorandum, and a failure to specify defects or error in the memorandum waives the same. *Hopkins* v. *Matters* (1916), 62 Ind. App. 676, 112 N. E. 248; 1 Watson's Rev., *Works' Practice & Forms* 466, § 659; 1 Lowe's Rev., *Works' Indiana Practice* pp. 659, 660, § 16.13. The record does not present any contention that the matters charged in the answer should have been raised by demurrer.

The demurrer to the plea in abatement was overruled, and upon failure of the appellants to plead further judgment was entered abating the action. From the record made in the trial court, we are advised that the appellants and appellees

considered as proper the manner used to raise the question of the validity of the acts of the Legislature, even though it was unorthodox. ". . . It has been held by this court that a party must abide by a procedure which he has induced the court to follow. In *Thorne* v. *Cosand* (1903), 160 Ind. 566, 67 N. E. 257, the appellant asked the court to submit a cause of equitable cognizance to a jury. After an unfavorable verdict and judgment, the appellant objected to that procedure. The court held that after that proceeding was had the appellant should not be allowed to question the regularity of the steps he had induced the court to take. To the same effect is *Dawson* v. *Shirk* (1885), 102 Ind. 184, 1 N. E. 292.

"4 C. J. 714, § 2627, states the rule as follows:

" 'Where a party voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain, on appeal or error, that proceedings had in conformity thereto were erroneous.'

"Also see 49 C. J. 668, §§ 945 and 946, and authorities there collected. . . ." *State ex rel. Reiman* v. *Kimmel* (1937), 212 Ind. 639, 646, 647, 10 N. E. 2d 911. The parties by their conduct in the trial court and on appeal have sought a determination of the controversy on the merits, and in view of the great public interest involved in determining the validity of the acts in question, we shall decide the matter on the merits. The questions presented in this appeal are not moot even though the acts have been published, distributed and proclaimed in effect by the Governor.

"It is a maxim as old as the common law, and a rule of necessity, that the court takes judicial notice of

public law; it is presumed to know what it is, and it is its duty to know it." *Evans, Auditor* v. *Browne* (1869), 30 Ind. 514, 520. This court has the right to make use of any source of information which will give a correct answer to the question. *State ex rel. Colbert* v. *Wheeler* (1909), 172 Ind. 578, 89 N. E. 1. In the discharge of this right and duty we have examined the enrolled acts filed with the Secretary of State, and find each of the acts sought to be questioned in this proceeding has been properly authenticated by the President of the Senate and the Speaker of the House. Although it is admitted by the issues that both the questioned acts and the House journals show all legislative action was taken before the constitutional time for adjournment, we have also examined the journal of each House and find that each shows an adjournment *sine die* at 11:59 P.M., March 7, 1949.

Since the decision in *Evans, Auditor* v. *Browne* (1869), 30 Ind. 514, *supra,* this court has consistently held that a proper authentication of an enrolled act is conclusive, as a matter of law, that the act was duly passed in conformity to the constitution. *Bender* v. *State* (1876), 53 Ind. 254; *Board of Commissioners of Madison County* v. *Burford* (1883), 93 Ind. 383; *Stout* v. *Board of Commissioners of Grant County* (1886), 107 Ind. 343, 8 N. E. 222; *Hovey, Governor* v. *State, ex rel. Carson* (1889), 119 Ind. 395, 21 N. E. 21; *State ex rel. Board of Commissioners of Benton County* v. *Boice* (1895), 140 Ind. 506, 39 N. E. 64, 40 N. E. 113; *Western Union Telegraph Co.* v. *Taggart, Auditor* (1895), 141 Ind. 281, 40 N. E. 1051; *Lewis* v. *State* (1897), 148 Ind. 346, 47 N. E. 675; *State ex rel. Colbert* v. *Wheeler* (1909),

172 Ind. 578, 89 N. E. 1, *supra*.[1]  This is a rule of substantive law and not of evidence, and there is no pleading known to the law by which the existence of an act can be put in issue and tried as a question of fact. *Evans, Auditor* v. *Browne* (1869), 30 Ind. 514, *supra; State ex rel. Colbert* v. *Wheeler* (1909), 172 Ind. 578, 89 N. E. 1, *supra; McCulloch* v. *State* (1858), 11 Ind. 424; *Hovey, Governor* v. *State* (1889), 119 Ind. 395, 21 N. E. 21, *supra*.[2]

Nor may this court examine into a charge of fraud committed by the General Assembly or the members thereof. "The judiciary, for constitutional reasons and upon grounds of public policy, have invariably declined to inquire into the motives which prompted the official acts of the legislature or of the executive; and courts will not hear and determine a charge of fraud and corruption to annul or to supply legislative action." *State, ex rel. Ketcham* v. *Terre Haute & Indianapolis Railroad Co.* (1906), 166 Ind. 580, 583, 584, 77 N. E. 1077. See also *McCulloch* v. *State* (1858), 11 Ind. 424, *supra*.

It is not necessary in this opinion to determine the effect of an act of fraud practiced upon the presiding officers who conceivably might authenticate as genuine

---

[1] The constitutional requirement for authentication is contained in § 25 of Article 4. "A majority of all the members elected to each House, shall be necessary to pass every bill or joint resolution; and all bills and joint resolutions so passed, shall be signed by the Presiding Officers of the respective Houses."

[2] "The Courts of justice are bound, *ex officio*, to take notice of public acts, without their being pleaded, for they are part of the general law of the land, which all persons, and particularly the judges, are presumed to know. Public acts cannot be put in issue by plea. *Nul tiel record* cannot be pleaded to a public statute; the judges are to determine the existence of them from their own knowledge." 1. *Kent's Commentaries* (14th Ed.) pp. 619, 620.

a bill not in the words as duly passed. There is no contention here of any such fraud as was presented in *State ex rel. Mayr, Secretary of State* v. *Marion Circuit Court* (1931), 202 Ind. 501, 176 N. E. 626.

It has been the consistent position of this court that the evils attending uncertainty in ascertaining the statutory laws of the state would far out-weigh any benefits which might be obtained by permitting an impeachment of the authentication of an act. If the members of the General Assembly violate their constitutional duties on adjournment, they can be defeated the next time such offices come up for election, but the remedy is not with the courts.

". . . Public authority and political power must, of necessity, be confided to officers, who, being human, may violate the trusts reposed in them. This perhaps cannot be avoided absolutely. But it applies also to all human agencies. It is not fit that the judiciary should claim for itself a purity beyond others; nor has it been able at all times with truth to say that its high places have not been disgraced. The framers of our government have not constituted it with faculties to supervise co-ordinate departments and correct or prevent abuses of their authority. It cannot authenticate a statute; that power does not belong to it; nor can it keep the legislative journal. It ascertains the statute law by looking at its authentication, and then its function is merely to expound and administer it. It cannot, we think, look beyond that authentication, because of the constitution itself. If it may, then for the same reason it may go beyond the journal, when that is impeached; and so the validity of legislation may be made to depend upon the memory of witnesses, and no man can, in fact, know the law, which he is bound to obey. Such consequences would be a large price to pay for immunity from the possible

abuse of authority by the high officers who are, as we think, charged with the duty of certifying to the public the fact that a statute has been enacted by competent houses. Human governments must repose confidence in officers. It may be abused, and there may be no remedy." *Evans, Auditor* v. *Browne* (1869), 30 Ind. 514, 526. See also Wigmore, *Evidence* (3rd Ed.) § 1350.

In view of the law establishing the conclusive regularity of the acts in question, it is unnecessary to determine the contention that the action was an unauthorized suit against the state. Appellants have presented no error in this appeal. Therefore, the judgment is affirmed.

Gilkison, C. J., dissents with opinion.

## DISSENTING OPINION

GILKISON, C. J.—The allegations of the complaint are substantially as set forth in the majority opinion, though they are much more direct and specific than in the opinion. They are fully sufficient to state a good cause of action showing a fraudulent violation of the Constitution of the State of Indiana by the members of the Eighty-sixth General Assembly. This violation the opinion in substance admits but seeks to excuse or avoid.

The complaint states a class action for injunction on behalf of relator and all citizens of Indiana similarly situated.

I think the record presents procedural defects that make the judgment rendered by the trial court wholly erroneous.

The record discloses that the appellees in the action have not entered a general appearance. The only appearance entered by them is a special appearance and

shown by the record thus: "Come now the defendants by counsel and file special appearance and plea in abatement for all the defendants herein, which is as follows:" Then follows the plea in abatement, which omitting caption, signature and verification, is as follows:

"Comes now J. Emmett McManamon as Attorney General of the State of Indiana, Earl R. Cox as Special Counsel to the Attorney General of the State of Indiana, and Thomas L. Webber as Deputy Attorney General of the State of Indiana, and hereby appear specially for and on behalf of each of the above named defendants, Henry F. Schricker, Governor of the State of Indiana; Charles Francis Fleming, Secretary of State of the State of Indiana; James M. Propst, Auditor of State of the State of Indiana; and F. Shirley Wilcox, Treasurer of State of the State of Indiana; for the sole purpose of filing this Plea in Abatement herein.

"Each of said defendants respectfully submits and contends by way of Plea in Abatement, that plaintiff's cause of action herein should abate for each of the following reasons:

"1.

"Plaintiff's Complaint admits that the Journals and Records of the House of Representatives and the Senate of the State, both comprising the Legislature of the State of Indiana, on their face show that said Legislature adjourned within the term required by the Constitution of the State of Indiana; the Complaint further admits that all Bills enacted by the said Legislature, as aforesaid, including those herein attacked appear in proper form and are properly signed, attested, certified and authenticated by the presiding officers of each House of the said General Assembly and Legislature; that according to all of said records said Acts appear on their face to have been duly enacted as required by the Constitution.

"This is conclusive on the question as to the validity of the enactment of said Acts. There-

fore, plaintiff's action herein in substance and in fact is an attempt to have the JUDICIAL branch of the Government of the State of Indiana interfere with the official activities and prerogatives of the LEGISLATIVE branch of the State Government when assembled.

"Any such action is prohibited by Article 3 Section 1 of the Constitution of the State of Indiana, and this Plea in Abatement should be sustained by the Court for the foregoing reason.

## "2.

"While this cause of action is filed against certain designated State Officials it is nevertheless in substance and in truth and in fact a definite outright suit against the State of Indiana and questions the actions of the Legislative branch of the State Government as assembled and is aimed at preventing the due printing, publication and promulgation of numerous Acts of the General Assembly of the State of Indiana for the year 1949; among which Acts so attacked is the General Appropriation Act, which is an integral and necessary Act to facilitate the carrying on of the functions and machinery of the State Government for the bienneum beginning July 1, 1949.

"Therefore, as such it is a definite suit against the State. Since the State of Indiana in the exercise of its sovereign rights has failed to grant authority for the filing of any such cause of action as is herein instituted the plaintiffs are without authority or right to prosecute said cause of action against the State of Indiana and therefore such cause of action should be ordered abated by this Court.

"Plaintiffs do not allege any such authority in them as granted by the State of Indiana to bring said action and therefore this said suit is against the State of Indiana without the consent of the State of Indiana.

"WHEREFORE, for each of the foregoing reasons each of the above named defendants respectfully submits that this Court should abate the within plaintiffs' cause of action herein and by

appropriate judgment and decree declare the same abated, and that said action by the Court be done with costs against the plaintiffs."

Relator filed a demurrer to the plea in abatement which, omitting caption and signature is as follows:

"Come now the plaintiffs herein, separately and severally, and demur to the Plea in Abatement of each of the defendants herein, and for ground of demurrer say that the said Plea in Abatement of each of said defendants as to each of the specifications 1 and 2 of said Plea in Abatement do not state facts sufficient to avoid plaintiffs' Complaint herein and do not state facts sufficient to abate the cause of action stated in plaintiffs' Complaint.

"Memorandum

"As to Specification 1.

"1. The Complaint herein by its allegations as set forth in rhetorical paragraphs 6, 7, 8 and 9 is based upon the theory that the General Assembly and its officers perpetrated a fraud and did not function and act in the passage of certain bills within the limitations as prescribed by the Constitution of the State of Indiana and that its officers 'falsely, fraudulently, knowingly, willfully and in utter disregard of said Constitutional provisions, pretended to function as a legal General Assembly of the State of Indiana after the said date of March 7, 1949.'

"2. Sections 1 to 10, Article 7, provide for the creation of the judicial branch of government as coordinate with the legislative and executive or administrative branches of the government as the powers are distributed by section 1, article 3 and the construction of the Constitution or the construction of a law or act of the legislature is a judicial function.

"Guckien, Treasurer v. Rothrock, 137 Ind. 355.

"3. The plea in Abatement in no manner challenges the allegations of fraud and illegal conduct as charged in the complaint.

"4. The provisions of the Constitution are equally binding on the three coordinate branches of government as set forth in the Constitution of the State of Indiana and each branch of government must function within the limitations as fixed by the Constitution or as provided by a legal act of the legislative branch.

"5. The Courts of the State of Indiana have the right to pass upon the question of the Constitutionality of an act of the General Assembly and to confine the acts of any person or body functioning under the provision of the Constitution or any law legally enacted by the legislative branch of government to the proper functioning under the provisions of the Constitution or any law so enacted.

"6. So, in view of the fraud and illegal acts charged in the complaint 'the Courts have the right and the duty to determine such questions' and this Court 'has jurisdiction to hear and determine the equitable proceeding now pending before it.'

"State ex rel. Mayr, Secretary of State v. Marion Circuit Court, 202 Ind., Page 501 (176 N. E., Page 626)

"As to Specification 2.

"7. By the allegations of the Complaint it is clear that the action is not directed against the State of Indiana but is directed against certain of the defendants who under the provisions of the Constitution have certain acts to perform relative to certifying and promulgating the illegal acts charged to have been fraudulently and illegally enacted in violation of the provisions of the Constitution as alleged in the Complaint and is also directed against certain officers to prevent the payment of money under the provisions of certain of said illegal enactments.

"8. The mere fact that the State of Indiana may be directly or indirectly affected by the filing of the Complaint does not make the State of Indiana a party to the suit.

"9. The officers attempting to function under the provisions of the Constitution in promulgat-

ing an illegal act of the General Assembly or in functioning under such illegal enactments are proper parties to the said suit.

> "See State ex rel. Mayr, Secretary of State v. Marion Circuit Court, 202 Ind., Page 501 (176 N. E., Page 626)."

This demurrer was overruled, and relator elected to stand on the ruling, and the court rendered judgment that the action abate and a further notable judgment on the merits of the case as follows:

> "It is further considered, adjudged and decreed by the court that the acts questioned in said complaint are legal, valid and constitutional enactments of the 1949 General Assembly of the State of Indiana and that each of the defendants recover of and from the plaintiff his costs in this behalf laid out and expended in the sum of $———."

It will be noted that appellants' memoranda Nos. 3, 7, 8 and 9, each pointedly call attention to defects in the Plea in Abatement. It is not necessary that the memorandum in a demurrer to a plea in abatement should advise the pleader that he should raise by demurrer the questions sought to be raised by the plea as suggested in the majority opinion. The statute providing for filing a memorandum with a demurrer requires only that the memorandum shall state "wherein such pleading is insufficient for want of facts." Burns' 1946 Replacement, § 2-1007 Cl. Sixth. The statute cited further provides: "and the party so demurring shall be deemed to have waived his right thereafter to question the same for any defect not so specified in such memorandum." However, this court has consistently held even in cases of demurrer to complaints, answers and replies other than pleas in abatement, the waiver provided by this statute, applies to the party demurring only and does not prevent this or the trial court from considering a demurrer fully no matter how defective

the specifications of memorandum may be. As well said by Townsend, J. in *Poer, Trustee* v. *State ex rel. Hinshaw* (1918), 188 Ind. 55, 58, 59, 121 N. E. 83, in discussing the waiver provided for in the law providing for a demurrer to a complaint with attached memorandum under § 2-1007, Burns' 1946 Replacement, Acts 1911, Ch. 157, § 2, p. 415, and which demurrer had been overruled by the trial court:

"This" statute "was intended to compel the one demurring to waive review on appeal of that which was not disclosed to the trial court. It does not follow, however, that this or the trial court is bound by such waiver. If the courts are to be bound always by such waiver, absurdities and injustice would result in many cases. It would take from the courts the power to decide justly. For instance, a complaint may be filed which is intended to invoke a certain law, and may ask a remedy not authorized by the law invoked. An action for negligence might be brought under a statute which expressly or by implication excluded such remedy. Can it be said that this or the trial court shall be compelled to let such a glaring injustice stand because purposely or inadvertently the question has been waived by the parties? To hold this would be to hold that the parties by the authority of the legislature could prevent courts from administering justice."

In discussing the same proposition in a case where a demurrer to a complaint, with attached memorandum, had been overruled by the trial court, Lockyear, J. speaking for the Appellate Court, said:

"In considering the sufficiency of a complaint this court is not limited to the reasons mentioned in the memorandum to the demurrer filed, but, if the complaint is essentially bad for any reason, it is our duty to so declare."

> *Board of Commissioners of Vigo County* v. *Moore* (1929), 93 Ind. App. 180, 189, 166 N. E. 779.

Neither of the cases last above cited has been overruled, distinguished, or in any way modified. The principles of law therein announced remain the unquestioned law of Indiana and are binding upon us in this case. The matter before us in this case is of such vast importance that a decision agreeable with the law, and not an excuse, or evasion is required.

This court has recently held that when an insufficient plea in abatement is filed to a complaint, and a general demurrer is filed to it with memorandum the court will read the demurrer and the memorandum together, and if such reading indicates "the plea in abatement does not state facts sufficient to abate the action because said plea is, in fact, an answer in bar. This is clearly sufficient to meet the requirements of the statute § 2-1007 Burns' 1933" and a proper reason for reversing a judgment overruling such a demurrer. *State ex rel. Gibson et al.* v. *Board of Commissioners of Adams Co. et al.* (1944), 222 Ind. 284, 286, 53 N. E. 2d 347. In the instant case when the plea in abatement is read in connection with the demurrer and the memorandum thereto as noted heretofore it is apparent that appellants' action is not against the State of Indiana. It is likewise apparent that appellees seek to raise by plea in abatement that which they should have presented by demurrer to the complaint.

The action is only against certain officers of the State to enjoin them from doing certain allegedly unlawful things, respecting some of the Acts of the 86th Session of the General Assembly of Indiana allegedly passed after the expiration of the time lawfully allotted for that session. Undoubtedly the second paragraph of the answer in abatement is bad. *Ex parte Fitzpatrick* (1909), 171 Ind. 557, 560, 86 N. E. 964, and cases there cited; *Bennett* v. *Jackson* (1917), 186 Ind. 533, 536, 116 N. E. 921; *State ex rel. Mayr, Jr.* v. *Marion Circuit*

*Court* (1931), 202 Ind. 501, 509, 176 N. E. 626; *Ford Motor Co.* v. *Dept. of Treasury, The State of Indiana et al.* (1944), 323 U. S. 459, 462 Head note 1, 89 L. Ed. 389, 393.

It was properly challenged by the demurrer and it was reversible error to overrule the demurrer to this paragraph.

Paragraph 1 of the plea in abatement avers no facts whatever. It merely calls attention to some of the averments of the complaint, in substance that the journals and records of both houses of the Assembly show on their face that the Legislature adjourned within the time required by the Constitution; and that all the bills attacked are properly signed, attested, certified and authenticated by the proper officers of the General Assembly. That these averments of the complaint are conclusive of the validity of the questioned Acts. It then avers the following remarkable conclusion of the pleader "plaintiff's action herein in substance and in fact is an attempt to have the *Judicial* branch of the Government of the State of Indiana interfere with the official activities and prerogatives of the *Legislative* branch of the State Government when assembled."

> " 'Plea in abatement' is one which, without disputing justice of plaintiff's claim, objects to place, mode, or time of asserting it; it allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer action on its merits, or deny existence of particular cause of action on which plaintiff relies."
>
> *Black's Law Dictionary* (3rd Ed.), p. 1366.
> *Bouvier's Law Dictionary* (Rawle's 3rd Ed.), Vol. 1, page 7; Vol. 3, page 2599.

*State ex rel. Gibson et al.* v. *Board of Comms. Adams Co.* (1944), 222 Ind. 284, 287, 288, 53 N. E. 2d 347, *supra.*

As said by Willoughby, J. in *Randolph* v. *State* (1928), 200 Ind. 210, 214, 162 N. E. 656.

> "If a plea in abatement is bad from any cause as against a demurrer, neither the trial court nor this court is bound by the statement of defects contained in the memorandum, nor by the failure of the demurring party to file a memorandum. . . ."

As supporting this statement of the law see also *Poer, Trustee* v. *State, ex rel. Hinshaw* (1918), 188 Ind. 55, 58, 59, 121 N. E. 83, *supra; Board of Commissioners of Vigo County* v. *Moore* (1929), 93 Ind. App. 180, 189, 166 N. E. 779, *supra; Meixell* v. *American, etc. Sales Co.* (1914), 181 Ind. 153, 156, 103 N. E. 1071; *C. Callahan Co.* v. *Wall Rice, etc. Co.* (1909), 44 Ind. App. 372, 373, 89 N. E. 418.

In Indiana,

> "Pleas in abatement must be certain to a certain intent in every particular, and must leave nothing to be supplied by intendment and no supposable answer unobviated. No presumptions of law or fact will be indulged in their favor."

*Randolph* v. *State* (1928), 200 Ind. 210, 213, 162 N. E. 656; *Brown* v. *State* (1933), 204 Ind. 585, 587, 184 N. E. 177; *Melville* v. *State* (1909), 173 Ind. 352, 358, 89 N. E. 490, 90 N. E. 467; *State* v. *Comer* (1902), 157 Ind. 611, 614, 62 N. E. 452; *Meixell* v. *American, etc. Sales Co.* (1914), 181 Ind. 153, 156, 103 N. E. 1071, *supra; Needham et al.* v. *Wright et al.* (1895), 140 Ind. 190, 193, 199, 39 N. E. 510; *Ward* v. *State* (1874), 48 Ind. 289, 291; *The Board etc., Tippecanoe Co. et al.* v. *The Lafayette, etc. R. R. Co. et al.* (1875), 50 Ind. 85, 117, 118; *Kelley* v. *State* (1876), 53 Ind. 311, 312; *Brown et al.* v. *Underhill et al.* (1891), 4 Ind. App. 77, 79, 30 N. E. 430; *Diamond Flint Glass Co.* v. *Boyd* (1903), 30 Ind. App. 485, 488, 66 N. E. 479; *C. Calla-*

*han Co.* v. *Wall Rice, etc. Co.* (1909), 44 Ind. App. 372, 373, 89 N. E. 418, *supra.*

In discussing this matter, New, J. has properly said:

"It therefore follows that a party's plea in abatement should not be entertained, that is to say, issue ought not to be joined upon it, unless the facts alleged in the plea, if proven, would give to the plaintiff a better writ. It must be so pleaded as to enable the plaintiff . . . to supply the defect, or avoid the mistake upon which the plea is founded."

*Brown* v. *Underhill et al.* (1892), 4 Ind. App. 77, 79, 30 N. E. 430, *supra.*

The majority opinion bases its refusal to consider the defects in the plea in abatement on *Hopkins* v. *Matters* (1916), 62 Ind. App. 676, 112 N. E. 248, which holds in substance that if no memorandum is filed with the demurrer to the plea in abatement, no question is presented by the demurrer. This holding is based upon three Indiana decisions, as follows: *Pittsburgh, etc., R. Co.* v. *Home Ins. Co.* (1915), 183 Ind. 355, 108 N. E. 525; *Wagner* v. *Wagner et al.* (1915), 183 Ind. 528, 109 N. E. 47; and *Quality Clothes Shop* v. *Keeney* (1914), 57 Ind. App. 500, 106 N. E. 541. No plea in abatement was filed in either of these cases and therefore no question was presented concerning the propriety of a memorandum to a demurrer to a plea in abatement or the sufficiency thereof and at least upon that proposition the decision is not substantially based.

I think the decision of Willoughby, Judge, in *Randolph* v. *State* (1928), 200 Ind. 210, 214, 162 N. E. 650, *supra,* seventeen years after the decision in the Hopkins-Matters case, states the law correctly and impliedly wholly overrules the decision in the Hopkins-Matters case no matter whether the demurrer is overruled or

sustained by the lower court. It is likewise overruled by *Poer, Trustee* v. *State ex rel. Hinshaw* (1918), 188 Ind. 55, 121 N. E. 83, *supra; Board of Commissioners of Vigo County* v. *Moore* (1929), 93 Ind. App. 180, 166 N. E. 779, *supra*. The law remains as it always has been that "If a plea in abatement is bad from any cause as against a demurrer, neither the trial court nor this court is bound by the statement of defects contained in the memorandum, nor by the failure of the demurring party to file a memorandum." This must, of necessity, be true because of the nature of a plea in abatement, the requisites of which are well stated, with many supporting authorities as follows:

"Answers in abatement are not favored, and therefore the utmost fullness and particularity of statement, as well as the highest attainable accuracy and precision, are required, leaving nothing to be supplied by intendment or construction, and they must anticipate and exclude all such supposable matter as would, if alleged by the opposite party, defeat the plea. And a plea in abatement must not only point out the plaintiff's error, but must show him how it may be corrected, and point out how he may avoid the same mistake in another suit on the same cause of action. There are no presumptions in favor of a plea in abatement, and nothing can be supplied by intendment or construction."

  1 Watson's Rev., *Works' Practice & Forms* 413, § 558.

See also 1 *Gavit's Indiana Pleading and Practice* 657, Cl. (d), § 140; *Flanagan's Indiana Pleading and Procedure,* § 109, p. 166, § 111, p. 169; 1 C. J. S., Abatement, § 3, p. 30; *State ex rel. Dept. of Fin. Inst.* v. *Sonntag* (1935), 101 Ind. App. 557, 565, 195 N. E. 601.

"There are no presumptions in favor of a plea in abatement, and nothing can be supplied by intendment or construction. A plea in abatement

cannot be aided by reference to the process or other papers in the case."

> 1 Lowe's Rev., *Works Indiana Practice* 594, 595, § 15.13. (See many Indiana authorities cited in Note 3).

Since there are no presumptions in favor of a plea in abatement and nothing can be supplied by intendment or construction we must take the two paragraphs of plea in abatement in this case just as they are. We can add nothing to them nor take anything from them by intendment, construction, addition or otherwise. *State ex rel. Dept. of Fin. Inst.* v. *Sonntag* (1935), 101 Ind. App. 557, 565, 195 N. E. 601, *supra*. The majority opinion points out no averment in either paragraph of the plea, which if true would warrant an abatement of the action, nor is it contended in the opinion that if all the averments in either or both paragraphs of the plea are accepted as true there would be any justification whatever for abating the action. I find nothing in either paragraph of the plea that would even tend to authorize a judgment abating the action. The record shows that the trial court heard no evidence on the abatement plea, but attempted to render judgment in abatement as on default. The judgment in abatement rendered is general and final in its nature. It leaves no provision for relator to renew his suit in another place or form, or at another time. It seems to be a permanent abatement. Such is unknown to the law. The judgment is therefore erroneous and should be reversed.

The opinion passes over the procedural errors noted and then following the further error of the trial court, proceeds to discuss the case on its merits. Since the case did not proceed to trial on its merits, either by demurrer to the complaint or by answer or otherwise,

the trial court was never in a position to pass upon the merits of the case. Also its judgment in abatement barred it as well as the parties from then considering the case on its merits. 1 C. J. S., Abatement, §§ 1 and 2, pp. 28, 29. 1 Watson's Rev., *Works' Practice & Forms* 682, 683, §§ 1028, 1029. Therefore, the last sentence of the judgment noted above, adjudging "that the acts questioned in said complaint are legal, valid and constitutional enactments of the 1949 General Assembly of the State of Indiana . . ." is wholly void.

In an effort to justify the trial court for rendering a judgment on the merits of an action in the same judgment and immediately after it had rendered a solemn judgment abating the action, the majority opinion says: "From the record made in the trial court, we are advised that the appellants and appellees considered as proper the manner used to raise the question of the validity of the acts of the Legislature, even though it was unorthodox." It then proceeds to cite and discuss cases where the procedure taken had been requested by the complaining party, or where he had agreed to the procedure taken. Such cases of course hold that he may not thereafter be heard to complain of the results reached or the "regularity of the steps he had induced the court to take." I have no objection to the law as stated in the cases and text-books cited in the opinion on this proposition. They are correct. However, I sincerely challenge the statement that anyone can be advised from the record made by the trial court that the appellants by any act, word, or deed ever indicated that they considered proper the methods used by the trial court to render a final judgment on the merits of the case. Appellants' only action, as shown by the record, which purports absolute verity, was to file their complaint; to file and present their demurrer to each paragraph of the plea in abatement, and when it was

overruled to stand on the demurrer and refuse to plead further; and then to appeal from the decision. They were never able to induce the trial court to take any action or follow any course they wanted or suggested. They stood firmly upon what they believed to be an erroneous ruling on the demurrer by the trial court, and appealed the case to this court in the sincere hope that the error might be corrected. Since this is the only record before us, it seems a monstrous thing to intimate, as does the majority opinion, that appellants must abide by the unorthodox procedure because they induced the court to follow it. Not only is the procedure unorthodox, it is unlawful in that it denied appellants their "remedy of due course of law" as provided for by Art. 1, § 12, of the Constitution of Indiana, and likewise of "due process of law" as provided for by Section 1, of the 14th Amendment of the Federal Constitution.

I think the entire opinion after the rather summary consideration of the demurrer to the plea in abatement is dicta only. It is about a matter that never came before the trial court for decision. In this situation a decision by our court on the matter cannot give life to the void judgment of the trial court noted above. Any decision we make thereon is likewise void.

The judgment should be reversed for the errors noted. The case should be sent back to the trial court that proper issues may be made and passed upon, and that a lawful judgment may be rendered.

NOTE.—Reported in 88 N. E. 2d 746.

ON PETITION FOR REHEARING

*Petition denied.*

Gilkison, J., dissents with opinion.

## DISSENTING OPINION

GILKISON, J.—Appellants have filed a petition for rehearing herein for many pertinent reasons some of which of a procedural nature I have answered in a dissenting opinion heretofore filed. In that opinion I did not discuss the case on its merits because no issue was presented to the trial court authorizing it to pass upon the merits of the case, and no general appearance was entered by appellees. However, my brother judges, entered the gateway of error opened by the trial court, and attempted to pass upon the merits of the case, and by overruling the petition for rehearing have widened the open gateway and enhanced the opportunity for error. For this reason I feel it my duty to enter the forbidden arena and discuss the case on its merits on the petition for rehearing.

There has been and there is nothing before the court but plaintiff's complaint. All proper averments therein must be accepted as true, since the decision is made solely upon the sufficiency of its averments to state a cause of action. Among other averments therein I quote grammatical paragraphs 6 and 7 as follows:

"6. Plaintiff further says that the said General Assembly and its duly elected and presiding officers thereof failed to adjourn its session at the day and hour as above required by the above referred to provisions of the Constitution of the State of Indiana, but that the said General Assembly with the full knowledge of each and all of the defendants herein, did purposely, fraudulently, flagrantly and designedly continue the sessions of both Senate and House of the said General Assembly until five-thirteen and five-sixteen P.M. respectively, Central Standard time on Wednesday March 9, 1949, for a period of more than forty-one hours after the time as above set and fixed by the Constitution of the State of Indiana for the regular and legal adjournment thereof which prolonged

sessions were in violation of said provisions of said Constitution. That in an attempt to avoid said provisions and without constitutional right so to do, and without authority of law, the said General Assembly and its officers stopped the clocks and the timepieces in their places of assembly at eleven twenty-two P.M. on said March 7, 1949, in a silly, foolish and illegal attempt to avoid the provisions of said Constitution. That said clocks and time-pieces were continued stopped at eleven twenty-two P.M. as of the date of March 7, 1949, until March 9, 1949, as aforesaid.

"7. Plaintiff further says that subsequent to the hour of midnight on Monday March 7, the said General Assembly in violation of each and all of the hereinbefore referred to constitutional provisions, remained in continuous session until the hour and date aforesaid and falsely, fraudulently, knowingly, willfully and in utter disregard of said Constitutional provisions, pretended to function as a legal General Assembly of the State of Indiana, after the said date of March 7, 1949. That the presiding officers of each of said Houses accepted and entertained resolutions, motions and bills and that the members of said Houses of said General Assembly voted on each and all of said actions and that a false and pretended record was made of each and all of said actions and that the said presiding officers of each of said Houses of said General Assembly falsely, fraudulently and willfully attested and certified to the genuineness and correctness of the said actions of each of said houses, then and there well knowing that the said actions of said Houses were not taken within the limitation of time so fixed by the provisions of the Constitution of the State of Indiana. That in pursuance of said illegal acts as aforesaid the presiding officers of each of said Houses of the General Assembly permitted the entry in the journal of each of said Houses of a record of each of the actions of said resolutions, motions and bills as made in each of said Houses subsequent to midnight, March 7, 1949. That said presiding officers have certified each of said actions to the Secretary of State in the manner as provided by law, then and there well knowing that said action is illegal

and a fraud upon the people of the State of Indiana. And further that the said General Assembly by its officers and employees falsely and fraudulently made an official record in its journal showing that the Assembly adjourned sine die at eleven fifty-nine P.M. March 7, 1949, then and there well knowing that said statement was false and untrue.

"That among the said bills so passed illegally and fraudulently and in violation of the above Constitutional provisions were the following: House Bills numbered 379, 380 and 381 being budget bills of various officers and functions of the State of Indiana involving an expenditure of the funds of the State of Indiana in the sum of approximately $————; House Bill 25 being designated World War Number Two Bonus Bill involving a large expenditure and also fifteen or twenty other bills involving expenditures and activities of various units and functions of government the exact nature and provisions thereof being unknown to plaintiff. That each and all of said above referred to bills as so falsely certified as having been passed by the said General Assembly are illegal and a fraud upon the taxpayers and citizens of the State of Indiana and in direct violation of the provisions of the Constitution of the State of Indiana."

The Constitution of Indiana with reference to sessions of the General Assembly affecting this action, is as follows:

"The sessions of the General Assembly shall be held biennially at the capital of the State, commencing on the Thursday next after the first Monday of January, in the year one thousand eight hundred and fifty-three, and on the same day of every second year thereafter, unless a different day or place shall have been appointed by law. But if, in the opinion of the Governor, the public welfare shall require it, he may, at any time by proclamation, call a special session."

Indiana Constitution, Art. 4, § 9.

"The members of the General Assembly shall receive for their services, a compensation to be fixed by law; but no increase of compensation shall take effect during the session at which such increase may be made. No session of the General Assembly, except the first under this Constitution, shall extend beyond the term of sixty-one days, nor any special session beyond the term of forty days."

Indiana Constitution, Art. 4, § 29.

In his superb answer to Edmund Burke's "Reflections on the French Revolution," Thomas Paine in 1791, defined and explained a constitution of a republic thus:

"A constitution is not a thing in name only, but in fact. It has not an ideal, but a real existence; and wherever it cannot be produced in a visible form, there is none. A constitution is a thing *antecedent* to government, and a government is only the creature of a constitution. *The constitution of a country is not the act of its government, but of the people constituting a government.* It is the body of elements, to which you can refer, and quote article by article; and which contains the principles on which the government shall be established, the manner in which it shall be organized, the powers it shall have, the mode of elections, *the durations of parliaments, or by what other name such bodies may be called;* the powers which the executive part of the government shall have; and, in fine, everything that relates to the complete organization of a civil government, and the principles on which it shall act, and by which it shall be bound. A constitution, therefore, is to a government, what the laws made afterward by that government are to a court of judicature. The court of judicature does not make the laws, neither can it alter them; it only acts in conformity to the laws made; *and the government is in like manner governed by the constitution.*" (My italics).

"Rights of Man" 1791, pages 48 and 49.

In the one hundred fifty-eight years that have elapsed since this definition and explanation was made, nothing with greater clarity or simplicity has issued from any source on this subject. For similar definitions see 16 C. J. S., Constitutional Law, § 1, p. 20, § 3, p. 21; 11 Am. Jur., Constitutional Law, § 2, p. 602. Many similar definitions and explanations have been given by this court. From some of these I quote as follows:

> ". . . On this continent we came to the time when the people, by revolution, took to themselves sovereignty, and in exercising supreme political power chartered governments by written constitutions. These organic instruments declared and guaranteed the rights and liberties of the individual, which had come to the people through centuries of struggle against absolutism in government. The majority was to rule, but under restraints and limitations which preserved to the minority its rights. 'By the constitution which they establish, they not only tie up the hands of their official agencies, but their own hands as well; and neither the officers of the State, nor the whole people as an aggregate body, are at liberty to take action in opposition to this fundamental law.' Cooley, Const. Lim (7th ed.) 56. The government so instituted was representative of the creator of it— the people. The agencies and agents for administering it were the people's agents. . . ."
> *Ellingham* v. *Dye* (1912), 178 Ind. 336, 342, 99 N. E. 1.

> "In our system of government, a written constitution is the highest expression of law. None other emanates directly from the sovereign people themselves. It is the deliberate and affirmative utterance of the sovereign majority. It seems unnatural to say that the sovereign majority, the authors of the designedly permanent, the fundamental, the organic law, intended that any of its safeguards should be abrogated by a failure to demand the abrogation; . . . On the contrary, one would expect a provision that the charter of our

liberties should stand unaltered until the sovereign majority, by affirmative action, expressed their desire for, and effected, a change. . . ."

*In Re Denny* (1900), 156 Ind. 104, 108, 59 N. E. 359.

Practically applying the definitions cited, the Supreme Court of the United States has said:

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances."

*Ex Parte Milligan* (1866), 4 Wall. 2, 18 L. Ed. 281, 295.

The Alabama Supreme Court has correctly said:

"Every officer in the government, from the executive to the humblest magistrate, is charged, to the extent of his sphere, with the preservation of constitutional rights."

*Sadler* v. *Langham* (1859), 34 Ala. 311, 329, quoted with approval in *Banks* v. *State* (1921), 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359, 1363.

Quoting again from our court:

". . . the discretion of Courts is more restricted in applying the rules of construction to a plan of government contained in a written constitution, than in the construction of statutes. And the reason is conclusive. Statutes are often hastily and unskillfully drawn, and thus need construction to make them sensible. But constitutions import the utmost discrimination in the use of language. 'They are the permanent will of the people, intended for the guidance of posterity.' Thus, Marshall, C. J., in relation to the Constitution of the United States: 'The framers of the constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they said.' *Gibbons* v. *Ogden,* 9 Wheat. 188.

> "So the dissenting opinion of Bronson, J., in *The People* v. *Purdy*, 2 Hill 31, subsequently declared in the Court of Errors to be the law, and cited with marked approbation in *Newell* v. *The People*. 'Written constitutions will soon become of little value, if their injunctions may be lightly overlooked; and the experiment of setting a boundary to power will prove a failure.'
>
> ". . . In construing the language of the constitution, Courts have nothing to do with the argument from inconvenience. Their sole duty is to declare, *ita lex scripta est*—thus saith the constitution. *People* v. *Morrell*, 21 Wend. 584."
>
> *Greencastle Twp. et al.* v. *Black* (1855), 5 Ind. 557, 570. Quoted with approval by Fansler, J. *In Re Todd* (1934), 208 Ind. 168, 207, 193 N. E. 865.

It must necessarily follow that the Constitution of Indiana within its sphere is a commanding law for governors, General Assemblies, Courts and the people and covers with its protecting shield all classes of people, at all times, and under all circumstances.

Therefore, we may with truth say that the Constitution of Indiana is a command of the people of the state, providing for their government. The state government is of necessity a creature of the people created by their written constitution. In this case the creature is attempting to overrule, defy and control its creator. I cannot understand how this can ever be possible. This court by Hovey, J. has properly said:

> "It has long since been beautifully declared by high authority, that 'a corrupt tree can not bring forth good fruit.' An unconstitutional provision can not be the basis of lawful proceedings." *Greencastle Township et al.* v. *Black* (1854), 5 Ind. 557, 564, *supra*.

By the written constitution the people of the state have commanded the creation of the three departments

of government; they have definitely commanded that each department be vested with certain rights and that each be charged with the performance of certain duties; but they have likewise definitely commanded each department to obey certain limitations and prohibitions. It is with an alleged violation of the latter command of the people as carefully recorded in the state constitution that we are concerned in this case. That limitation and prohibition is contained in the last sentence of Section 29 Art. 4 of the State Constitution, thus:

*"No session of the General Assembly, except the first under this Constitution, shall extend beyond the term of sixty-one days,* nor any special session beyond the term of forty days." (My italics).

This is a self-executing prohibition on the power of the General Assembly to continue in session or to act. So long as it acts within the powers granted, its acts are valid. When it acts beyond those powers, and especially when it acts in contravention and open defiance of a positive prohibition of the constitution, its acts are revolutionary and necessarily void. This rule is so elementary it should not require the citation of authority to sustain it. The paucity of authorities is because during the one hundred thirty-three years of our State's existence, members of the General Assembly have never before attempted to enact laws after the expiration of the time allotted by the Constitution for such activity. So far as we can learn the members of the General Assembly or comparable legislative body of no state in the nation have ever attempted to exercise such unlawful power, with the single exception of the members of the Legislature of the State of Florida. When an Act passed by the members of the Legislature of that state after the elapse of the time allotted by the state constitution for such activity and which was falsely au-

thenticated and placed in the records as having been properly enacted on the last day of the session, came before the Supreme Court of Florida, that court approved an action attacking the laws so attempted to be enacted, and adjudged that proper action should be taken to correct the legislative records involved to make them speak the truth. *State ex rel. Landis, Atty. Gen.* v. *Thompson* (1935), 121 Fla. 561, 564, 565, 164 So. 192. It thus appears that the only direct authority on the point in question is agreeable with my position.

Commenting on the *State ex rel. Landis* v. *Thompson, supra,* decision, the Supreme Court of Florida later said:

> "The rationale of that decision was that if the Legislature has no constitutional power to further legislate, or to further act as such with regard to any legislative proposition after its constitutional term of sixty days has run out, that then, by the same token, no mere record it may make of its non-constitutional sitting as a Legislature after it becomes *functus officio* can rise to any greater evidentiary dignity in the consideration of the courts than the unconstitutional setting itself could rise. Accordingly it was held that since the courts are bound under the law to take judicial notice of legislative records, but notice only of constitutionally made records of the Legislature, as importing absolute verity in their contents, they are necessarily invested with inherent power to use their appropriate judicial processes to expunge from the range of their judicial observation in an appropriate case any purported legislative journal entries that were not made in contemplation of law as a record of what the Legislature did during a constitutionally authorized sitting as a legislative assembly."
>
> *State ex rel. Cunningham et al.* v. *Davis, Jr. et al.* (1936), 123 Fla. 41, 57, 166 So. 289.

By its repeated decisions the Florida Supreme Court has held that the prohibitive orders of the people ex-

pressed in the Constitution by which they created their government must be obeyed by the Legislature; that any pretended action in contravention and defiance of such prohibitive orders is null and void; and that the Supreme Court has the power by appropriate processes to expunge "from the range of their judicial observation" any purported laws that were not enacted during a "constitutionally authorized sitting of" the Legislature. The Florida decisions are the only decisions directly applicable to the instant case.

I agree with the majority opinion "that the court takes judicial notice of public law; it is presumed to know what it is, and it is its duty to know it." But in the case before us, the averments of the complaint must be taken as true. So considering the issue, the laws complained of could not become the public law of the state, for they were attempted to be enacted by the members, after the General Assembly had become *functus officio,* in open and utter contravention and defiance of the express prohibitions contained in the last sentence of Section 29 Art. 4 of the Indiana Constitution, *supra.* If we follow the rule of taking judicial notice of public law as quoted in the majority opinion and noted above, we must in the instant case follow the further rule that we must accept as true the well pleaded facts contained in the complaint, particularly grammatical paragraphs 6 and 7 thereof. So, we must know that the laws attacked, are wholly spurious and should be judicially declared void. For after the expiration of the time the people of the state by the constitution have allotted for the regular session, the members of the Assembly have no more authority to enact laws than any other group of citizens of the state. Should the General Assembly within the time allotted by the constitution fail to pass a motion to adjourn *sine die,* the constitution steps in

and effectively performs that duty for it. The constitution is the commanding voice of the people of the state.

I think it is the law as stated in the majority opinion "that a proper authentication of an enrolled act is conclusive, as a matter of law that the act was duly passed in conformity to the constitution." But there is no such presumption of conclusiveness unless the authentication *is proper*. The complaint in this case directly attacks the improper authentication of the questioned laws and procedure. I think we as a court have failed to perform our duty unless we pass upon this particular point of attack, and pass upon it in the light of the constitutional prohibitions aforenoted. The people have no other defense to the evils flowing from the usurpation of power by the members of the General Assembly, but by the impartial enforcement of the constitution.

The majority opinion takes the position that we are bound by the false and fraudulent authentication of the questioned Acts. I think this position is not only erroneous but is exceedingly ominous, a violent assault upon the constitution, an open approval of fraud upon the people, a special favor to government at the expense of freedom that may lead to quite unpredictable results. It is a stealthy encroachment upon, and a gradual depreciation of the people's rights under the constitution. *Banks* v. *State* (1921), 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359, 1362, *supra*. As the case is before us it clearly appears that the Acts questioned were agreed upon by the members after the constitutional close of the regular session of the 86th General Assembly. The false authentication, by the members of the constitutionally adjourned Assembly, gives them no validity whatever. In this case the validity of an Act regularly passed in either a general or special ses-

sion but irregularly authenticated is not before us, and the authorities cited in the majority opinion on that proposition are not applicable in this case. The matter before us, questions a whole series of spurious Acts agreed upon, and a course of spurious procedure had by the members of the General Assembly after the constitutional close of the regular session 1949, and the effort to make these Acts and this procedure valid laws by the false and fraudulent method of predating their authentication. The General Assembly is not charged with committing a fraud. The fraud charged was committed by its members after the session was constitutionally ended.

Apparently conceding the truth of the unusual proceedings charged in the complaint, and also probably as a partial excuse for the equally unusual position of expedience taken by the majority, the opinion asserts: "If the members of the General Assembly violate their constitutional duties on adjournment, they can be defeated the next time such offices come up for election, but the remedy is not with the courts." This gem of thought is quite gratuitous and the suggested remedy is no remedy at all. The unlawful action has been taken and injury and damage are flowing therefrom. The defeat of the erring members at ensuing elections would in no manner eliminate the foisted laws. The acknowledged evil is so great as to threaten seriously the continued existence of a people's government. The majority opinion gives the stamp of approval to this course of conduct by the members of the General Assembly after the permanent adjournment of the session. It gives a license for the adoption of this course of procedure by future members of the General Assembly and may be cited as judicial authority therefor. If the members of the General Assembly violated the constitution by stopping the clocks and continuing to

operate for two days after its constitutional close by following the "stopped clocks" time, this court has done precisely the same thing and committed the same error by the majority opinion. This usurpation of power in defiance of the express constitutional prohibition noted can bind no one legally, but is a serious threat to constitutional government.

The faithful performance of official duties commanded by the constitution is in no sense an assertion of superior purity by the courts. The Constitution of the state charges the courts with many very definite duties, some of which are:

> "All courts shall be open; and every man, for injury done to him in his person, property or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial, speedily and without delay."
>
> Indiana Constitution, Art. 1, § 12.

It is a duty of this court, and was a duty of the trial court, to be open to the plaintiff's relator, not to brush him off without a hearing, but to give him and the people he represents, being all the citizens of the state, their remedy "by due course of law." They were and are entitled to justice "completely and without denial." I refuse to believe as the majority opinion indicates, that the rights of a citizen or of all the citizens like those questioned here may be denied or abused without a remedy. If such rights can be so denied, then our constitution is meaningless—a thing in name only, having an ideal, but not a real existence.

Simply stated the question presented in this case—considered on its merits—is whether the members of the General Assembly, after the constitutional close of a regular session, may by the simple process of

stopping the clocks, remain in session and lawfully function for a period of two days thereafter, and whether the laws agreed upon and other action taken during that period by such members is made valid by having it falsely and fraudulently authenticated by dating it as having been done two days earlier? Among other excuses the majority opinion seems to hold that because the fraud was committed by the General Assembly this correlative department of state government may not interfere by ordering the correction of the fraud or the elimination of the laws it produced. While I do not agree with this statement of the law, I shall not discuss it because that question is not before us in this case, for we do not have a General Assembly except when the members thereof are in either general or special session agreeable with the State Constitution, Sections 9 and 29, Art. 4, *supra*. They were not in session, either general or special, after March 7, 1949. All the fraudulent Acts and procedure complained of were agreed upon by the constitutionally adjourned members on March 8 and 9, 1949, when they were totally without legislative power. Their fraud consisted in predating the authentication of these Acts to make them appear as having been enacted prior to the Constitutional close of the session. The majority opinion apologetically approves this conduct and attempts to validate these spurious acts.

It is basically erroneous to say that the courts are without power to remedy violations of constitutional limitations and prohibitions by officials and members of the executive, or legislative departments of the state government. When such violations are brought before us directly as is done in this case it is our duty to act; not to rely upon mere inertia to excuse the performance of positive duty. I approve and adopt as my own, a statement of the Alabama Court of Appeals with re-

spect to the court's duty when faced with the admitted facts in this case, as follows:

> "The power to forgive, condone, or heal the violation of plain, unambiguous mandates, prohibitions or limitations of the Constitution is denied to the courts and judges of this state, although such violation may result in the greatest good, or may promote a universal benefaction."
> *Banks* v. *State* (1921), 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359, 1364, *supra.* See also *Bradley* and *Taylor* v. *State* (1949), 227 Ind. 131, 84 N. E. 2d 580, and cases cited; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915.

However, the majority opinion now becomes the law of the state. Of course, if the members of the General Assembly may legally enact laws in this manner two days after the constitutional close of the session, they may continue to do so until the beginning of the next regular session nearly twenty-two months later, and the state may be burdened with a perpetual session of the General Assembly without any lawful change in the State Constitution providing therefor. I think the majority opinion may be cited as authority for this course of procedure. What then becomes of the state constitution? Answering again, we must say it ceases to exist in fact and becomes only an ideal. It is destroyed by its own creatures—the members of an adjourned General Assembly. I cannot follow this revolutionary idea. The petition for rehearing should be sustained and the judgment should be reversed.

NOTE.—Dissenting opinion on petition for rehearing reported in 89 N. E. 2d 547.