**James E. BRADLEY, Kay C. Miller and 354 Other Persons Owning Property in the Proposed Annexed Territory, Appellants–Plaintiffs,**

v.

**CITY OF NEW CASTLE, Indiana, Appellee–Defendant.**

**No. 33A01–9807–CV–281.**

Court of Appeals of Indiana.

June 26, 2000.

George T. Patton, Jr., Kevin S. Smith, Bose McKinney & Evans, Indianapolis, Indiana, E. Edward Dunsmore, Knightstown, Indiana, Attorneys for Appellants.

Bruce W. McLaren, Mary Louise Dague Buck, Warner, Wallace, McLaren & Dague, Muncie, Indiana, Attorneys for Amici Curiae in Support of Appellants.

Kevin W. Dogan, Indianapolis, Indiana, David L. Copenhaver, R. Scott Hayes, Scotten & Hinshaw, New Castle, Indiana, Attorneys for Appellee.

R. Thomas Bodkin, Jason P. Lueking, Douglas A. Welp, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, Indiana, Attorneys for Amici Curiae in Support of Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Plaintiffs, James E. Bradley, Kay C. Miller and 354 Other Persons Owning Property in the Proposed Annexed Territory (hereinafter "Remonstrators"), appeal the trial court's Order granting partial summary judgment in favor of the Appellee–Defendant, City of New Castle, Indiana (hereinafter "City" or "City of New Castle"). Remonstrators further appeal the trial court's decision allowing the City to amend its Fiscal Plan during trial.

We reverse and remand with instructions.

### ISSUES

Remonstrators raise two issues on appeal, which we restate as follows:

1. Whether the trial court improperly granted partial summary judgment in favor of the City of New Castle with regard to paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance.

2. Whether the trial court improperly allowed the City of New Castle to amend its Fiscal Plan during trial.

### FACTS AND PROCEDURAL HISTORY

On December 7, 1992, the Common Council of the City of New Castle passed Ordinance No. 2892, as amended. Ordinance No. 2892 provides for the annexation of four areas in Henry County, Indiana, which are contiguous to the City of New Castle. These four areas were identified in Ordinance No. 2892 as: Annexation Area # 1, Elmwood Addition; Annexation Area # 2, Blue River Valley; Annexation Area # 3, McGrew Addition; and Annexation Area # 4, Wildwood Estates (west half and east half). These four areas total approximately 757.3 acres.

In October 1992, Ordinance No. 2892 was formulated. A public information hearing regarding this Ordinance and the City's Fiscal Plan for annexation was held by the New Castle Common Council on October 19, 1992. At a meeting of the Common Council on November 2, 1992, Ordinance No. 2892 passed first reading. At the November 16, 1992, Common Council meeting Ordinance No. 2892 was amended to exclude a 24 acre tract of vacant farm land from Annexation Area # 4, separating this area into a west half and east half. The amendment was voted on and approved. Further, at this meeting, Ordinance No. 2892, as amended, was also voted on and approved on second reading. On December 7, 1992, a third and final reading of Ordinance No. 2892, as amended, was voted on and passed by the City Common Council. Amended Ordinance No. 2892 was signed by the Mayor of the City of New Castle on December 7, 1992.

Also, at the November 2, 1992, Common Council meeting, the City's Fiscal Plan was passed by resolution. However, at the November 16, 1992, council meeting, the Fiscal Plan was amended and further, at the December 7, 1992, council meeting the Fiscal Plan was again amended. A

resolution to adopt the Fiscal Plan, as amended, was passed on December 7, 1992.

On December 10, 1992, and December 17, 1992, Ordinance No. 2892 was published in two New Castle area newspapers, the *News Republican* and the *Courier Times*. However, this Ordinance was published without maps of the City containing the proposed annexed areas. The City had previously published copies of the maps in these newspapers on November 19 and 26, 1992, without publishing a copy of the Ordinance.

On February 5, 1993, the Remonstrators filed a Petition for Declaratory Judgment and Petition for Remonstrance. The Remonstrators are property owners who reside in the above-described annexed areas. Essentially, the Remonstrators object to the City's annexation of land upon which they own property. More specifically, the Remonstrators challenge the manner in which the annexation ordinance was passed by the City's Common Council and the alleged failure of the City to comply with certain statutory requirements for annexation.

Remonstrators' Petition was amended several times and on May 25, 1994, the Remonstrators filed their Third Amended Petition for Declaratory Judgment and Remonstrance in two counts. Count I sought declaratory judgment and Count II sought remonstrance under Ind.Code § 36–4–3–11. On June 9, 1994, the City filed a Response to the Remonstrators' Third Amended Petition. The trial court treated the City's Response as a motion for summary judgment. Thereafter, the parties submitted to a briefing schedule and filed briefs and designated materials. On July 18, 1995, the trial court issued its Order granting a final partial summary judgment in favor of the City of New Castle on Count I of Remonstrators' Third Amended Petition for Declaratory Judgment and Remonstrance. The trial court further granted partial summary judgment in favor of the City on paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of the Remonstrator's Third Amended Petition.

Remonstrators initiated an appeal of the trial court's decision concerning Count I and sought certification for interlocutory appeal of the trial court's decision with regard to Count II. The Remonstrators further requested a stay of the proceedings in the trial court. On August 24, 1995, the trial court certified for interlocutory appeal the summary judgment order as to Count II but denied the Remonstrator's request for a stay of the proceedings in the trial court. On October 2, 1995, this court accepted jurisdiction of the interlocutory appeal. On November 9, 1995, the parties filed with this court a Joint Motion to Dismiss Appeal seeking a dismissal with prejudice of the appeal concerning Count I and a reservation to appeal after final judgment the partial summary judgment granted with regard to Count II. This motion was subsequently granted by this court.

The trial of this matter began on November 13, 1995. On the third day of trial, the City changed its theory of annexation regarding Area # 2 (Blue River Valley) as a result of this court's decision in *Rogers v. Municipal City of Elkhart*, 655 N.E.2d 593 (Ind.Ct.App.1995).[1] Thus, the plaintiffs requested a continuance of the trial in order to defend on this new ground. Therefore, on November 15, 1995, the trial court granted a continuance of the trial.

On December 1, 1995, the Remonstrators filed a motion to dismiss due to the change in the City's theory. On December 14, 1995, the trial court denied this motion. The Remonstrators also filed a motion requesting the trial court to determine that the City had made a judicial admission. This motion was also denied on January 10, 1996.

1. This decision was later vacated by the Indiana Supreme Court in *Rogers v. Munici-* *pal City of Elkhart,* 688 N.E.2d 1238 (Ind. 1997).

The trial resumed on July 29, 1996, and was concluded on August 6, 1996. On March 3, 1997, the City filed a motion pursuant to Ind. Trial Rule 53.2. As a result, on April 8, 1997, the Indiana Supreme Court appointed the Honorable Barbara A. Harcourt as Special Judge in this case. At a status conference with Special Judge Harcourt on June 12, 1997, the parties agreed that no additional trial time was needed and further agreed that the Special Judge could enter judgment after listening to the audiotapes from the nine day trial and by reviewing the exhibits admitted at trial. Thereafter, on June 17, 1998, Special Judge Harcourt issued her Judgment in favor of the City, which included Findings of Fact and Conclusions of Law.

This appeal ensued.[2]

## DISCUSSION AND DECISION

### I. *Partial Summary Judgment*

The trial court granted partial summary judgment in favor of the City as to Count I of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance and as to paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition. However, as noted, Remonstrators previously dismissed with prejudice their appeal of Count I and are pursuing herein an appeal of the trial court's decision granting partial summary judgment as to above-mentioned paragraphs in Count II. .

In paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrators' Third Amended Petition, Remonstrators raise various challenges to the adoption of the annexation ordinance and the City's Fiscal Plan. The trial court considered these challenges procedural in nature.

### A. *Remonstrators' Allegations*

In paragraph 6(f), the Remonstrators allege that the City violated Ind.Code § 36-4-3-3 [3] by failing to define the City's corporate boundaries. Paragraph 6(g) also asserts that the City violated Ind. Code § 36-4-6-13 [4] because Ordinance No. 2892, as amended, created a different ordinance from the original Ordinance No. 2892, and as such, its introduction on November 16, 1992, failed to comply with Ind.Code § 36-4-6-13 in that there was no record of a unanimous consent of the

---

2. A Brief of Amici Curiae was filed in support of the Remonstrators by the Citizens Opposing Annexation in Salem Township, Citizens Opposing Muncie Annexation, Industria Centre Business Owners, Indiana Property Rights Association, Citizens in Action, Inc., and Indiana Township Association. Also, an Amicus Brief was filed by the Indiana Municipal Lawyers Association in support the City of New Castle.

3. **Ind.Code § 36-4-3-3** provides: (a) The legislative body of a municipality may, by an ordinance defining the corporate boundaries of the municipality, annex territory that is contiguous to the municipality, subject to subsection (b).

(b) If territory that was not contiguous (under section 1.5 of this chapter) was annexed in proceedings begun before May 1, 1981, an ordinance adopted after April 30, 1981, may not annex additional territory that is contiguous when the contiguity is based on the additional territory's boundaries with the previously annexed territory.

(c) Subsection (b) does not apply when the previously annexed territory has been used as a part of the contiguous boundary of separate parcels of land successfully annexed to the municipality before May 1, 1981.

(d) This subsection does not apply to a town that has abolished town legislative body districts under IC 36-5-2-4.1. An ordinance described by subsection (a) must assign the territory annexed by the ordinance to at least one (1) municipal legislative body district.

4. **Ind.Code § 36-4-6-13** provides: (a) A two-thirds (⅔) vote of all the elected members, after unanimous consent of the members present to consider the ordinance, is required to pass an ordinance of the legislative body on the same day or at the same meeting at which it is introduced.

(b) Subsection (a) does not apply to a zoning ordinance or amendment to a zoning ordinance that is adopted under IC 36-7.

members present on that date. Additionally, Remonstrators assert in paragraph 6(h) that the City failed to comply with Ind.Code § 36–7–4–205.[5] Further, Remonstrators alleged in paragraph 6(j) that the City violated its previous Ordinance No. 2229, § 205, p. 5, and § 253, p. 14, and Ind.Code § 36–9–23–7,[6] in passing a resolution regarding sewer and water hook-up for the annexed areas. Paragraph 6(*l*) alleges that the requirements of Ind.Code § 36–4–3–13(d)[7] were not met on the purported date of the passage of the Annexation Ordinance, November 15, 1992, because the City's Fiscal Plan was not established by a resolution of the legislative body by that date. Paragraph 6(m) alleges that at the council hearings regarding Ordinance 2892, the City failed to read the ordinance in full and failed to read the legal descriptions contained in the ordinance. Finally, the Remonstrators allege in paragraph 6(n) that the City changed the legal description of the proposed annexed areas from the first meeting to the second meeting and excluded areas proposed at the first meeting without bringing this change to the public's attention at the second meeting.

In paragraph 7, the Remonstrators allege that the City's publication of the Ordinance at issue failed to comply with the requirements of the Municipal Annexation and Disannexation Act, Ind.Code § 36–4–3–1, et seq. In paragraph 8(a) and (b), the Remonstrators complain that the City does not have a complete and accurate survey of the portion of the City's boundaries adjoining the property to be annexed and that the corporate boundaries may not be defined without a complete and accurate survey. The City is required to define the corporate boundaries under Ind.Code § 36–4–3–3 and Ind.Code § 36–7–3–4 allows for such a survey. In paragraph 8(c) and (d), the Remonstrators also assert that Ordinance No. 2892 includes property that is already within the corporate boundaries of the City of New Castle in its definition of the areas to be annexed and that Ind.Code § 36–4–3–13[8] requires a finding that

---

5. **Ind.Code § 36–7–4–205(a)** requires a city's municipal plan commission to adopt a comprehensive plan for development of contiguous unincorporated areas that "bears reasonable relation to the development of the municipality." Ind.Code § 36–7–4–205(e) prevents the municipal plan commission from exercising such jurisdiction over the unincorporated area if that area is part of a comprehensive plan and ordinance adopted by the legislative body of the county, unless that ordinance so provides.

6. **Ind.Code § 36–9–23–7** provides: After the completion or acquisition of the sewage works, the board shall operate, manage, and control the works and may order and complete any extensions or improvements it considers necessary. The board shall adopt rules for the use and operation of the sewage works and of other sewers and drains connected to the works, to the extent that they may affect the operation of the works.

7. See page 23 herein for text of Ind.Code § 36–4–3–13(d).

8. **Ind.Code § 36–4–3–13** requires: (a) Except as provided in subsections (e) and (g), at the hearing under section 12 of this chapter, the court shall order a proposed annexation to take place if the following requirements are met:
  (1) The requirements of either subsection (b) or (c).
  (2) The requirements of subsection (d).
  (b) The requirements of this subsection are met if the evidence establishes the following:
  (1) That the territory sought to be annexed is contiguous to the municipality.
  (2) One (1) of the following:
    (A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre.
    (B) Sixty percent (60%) of the territory is subdivided.
    (C) The territory is zoned for commercial, business, or industrial uses.
  (c) The requirements of this subsection are met if the evidence establishes the following:
  (1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.
  (2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

the areas to be annexed are contiguous to the municipality and that proof of this contiguity was not provided in the Ordinance.

Remonstrators assert in paragraph 9 that Amended Ordinance No. 2892 additionally violated Ind.Code § 36–1–3–3 [9] by not adequately defining the corporate boundaries of the City. Paragraph 10 alleges that a legal description was not included in the publication notice. In paragraph 12, Remonstrators claim in summary fashion that the annexation should not take place due to the City's failure to comply with the restrictive or limiting provisions of the Municipal Annexation and Disannexation Act, Ind. Code § 36–4–3–1, et seq.

Remonstrators further assert in paragraph 13 that the annexation should not take place because there were illegalities in the procedures involved in the passage of the annexation ordinance. Finally, in paragraph 14, Remonstrators contend that the annexation should not take place because there were errors or omissions in the procedures involved in the passage of the annexation ordinance, rendering the New Castle Common Council without subject matter jurisdiction and/or *in personam* jurisdiction.

### B. *The Trial Court's Summary Judgment Order*

In granting partial summary judgment, the trial court concluded that the Remonstrators' allegations set forth in paragraphs 6, 7, and 8 of Count II, alleging irregularities in the annexation proceeding and adoption of the Ordinance, did not raise matters properly within the scope of judicial review. The trial court based this decision on the Separation of Powers Doctrine, concluding that this doctrine prohibits the trial court from looking behind the

adopted ordinance to review proceedings of the New Castle Common Council. Furthermore, the trial court found that remonstrance is the exclusive remedy available to the plaintiffs and that the Remonstrator's allegations do not fall within the permissible scope of collateral attack.

Additionally, the trial court found that Remonstrators' claim in paragraph 9, alleging that the City violated Ind.Code § 36–1–3–3 by failing to adequately define the City's corporate boundaries, presented nothing for the trial court to review because Ind.Code § 36–1–3–3 simply constitutes a policy statement regarding a presumption in favor of the existence of municipal powers. With regard to the allegation in paragraph 10, the trial court concluded that this allegation was also outside the scope of judicial review of a legislative function, was not recognized within the scope of the exclusive legislative remedy, was not the subject of a proper collateral attack, and was not based upon a statutory requirement.

The trial court further found that the allegations in paragraph 13 added no new claims in addition to those previously set forth in paragraphs 6 through 10. Finally, with regard to paragraphs 12 and 14, the trial court concluded that these paragraphs are overly broad and contain no specific allegations.

### C. *Standard of Review*

■ Remonstrance actions may properly be subject to summary judgment motions. *Deaton v. City of Greenwood,* 582 N.E.2d 882, 884 (Ind.Ct.App.1991). When reviewing an entry of summary judgment, this court applies the same standard as the trial court. *City of Fort Wayne v. Kotsopoulos,* 704 N.E.2d 1069, 1070 (Ind.Ct.App. 1999). "Summary judgment is appropriate

---

* *The text of Ind.Code § 36–4–3–13(d) can be found on page 23 herein.

9. **Ind.Code § 36–1–3–3** provides: (a) The rule of law that any doubt as to the existence of a power of a unit shall be resolved against its existence is abrogated.

(b) Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence. This rule applies even though a statute granting the power has been repealed.

when the evidentiary matter designated to the trial court shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct. App.1998), *trans. denied.* We will affirm a summary judgment on appeal if it is sustainable under any theory or basis found in the evidentiary matter designated to the trial court. *J.S. Sweet Co., Inc. v. White County Bridge Com'n*, 714 N.E.2d 219, 222 (Ind.Ct.App.1999). However, this court does not weigh evidence and will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994). Further, the non-moving party need only address those issues argued by the movant and need not present evidence on a particular element of a claim not addressed by the movant. *Kennedy v. Murphy*, 659 N.E.2d 506, 508 (Ind.1995). Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Deaton*, 582 N.E.2d at 884. Finally, we review pure issues of law *de novo*. *Reese v. Reese*, 696 N.E.2d 460, 462 (Ind.Ct.App.1998). As the trial court noted, the Remonstrators' factual allegations are not material to the questions presented here, as the issues presented are questions of law. (R. 520). Accordingly, we will apply a *de novo* standard of review.

### D. *Analysis and Decision on Partial Summary Judgment*

On appeal, the Remonstrators assert that the trial court erred in granting partial summary judgment on paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II. Specifically, the Remonstrators argue that the trial court improperly applied the Separation of Powers Doctrine to this matter because case law has consistently held that this doctrine does not apply to actions of municipalities.

The Separation of Powers Doctrine of the Indiana Constitution provides that: "The powers of the Government are divided into three separate departments; the Legislature, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." IND. CONST. art. III, § 1. This doctrine has been interpreted to preclude judicial investigation of legislative processes, culminating in the enrollment of acts. *Evans, Auditor of State v. Browne*, 30 Ind. 514, 1869 WL 3177 (Ind.1869). The "Enrolled Act Rule" set forth in *Evans* has been followed since that decision and recently our supreme court described the rule as follows:

"It is settled law in this state that, when an enrolled act is authenticated by the signatures of the presiding officers of the two houses, it will be *conclusively presumed* that the same was enacted in conformity with all the requirements of the Constitution, and that the enrolled bill contains the act as it actually passed, and it is not allowable to look to the journals of the two houses, or to other extrinsic sources, for the purpose of attacking its validity *or the manner of its enactment.*"

*Bayh v. Indiana State Bldg. and Const. Trades Council*, 674 N.E.2d 176, 179 (Ind. 1996) (*quoting Roeschlein v. Thomas*, 258 Ind. 16, 25, 280 N.E.2d 581, 587 (Ind.1972)) (*quoting State v. Wheeler*, 172 Ind. 578, 580, 89 N.E. 1, 2 (1909)) (emphasis in *Roeschlein*).

Relying on this precedent, the trial court concluded that the Enrolled Act Rule appears applicable to the adoption of ordinances by common councils of municipalities. (R. 533). The trial court explained:

It appears well settled that municipal ordinances enacted pursuant to a proper delegation of power stand on the same footing as acts of the legislature when subjected to constitutional scrutiny.

By analogy, this Court has looked at the extent to which the judicial branch has been inclined to review legislative processes and procedures in determining the legal viability of acts of the Indiana General Assembly. This analogy has been drawn as the legislative function referred to in *Chidester (1992 and 1994),*[10] *supra* is derived by municipalities from the Indiana General Assembly. Thus, if *Article 3, § 1* of the *Indiana Constitution,* prohibits the courts from engaging in a review of legislative processes, such prohibition should be extended to court review of legislative processes of municipalities under a legislative grant of authority by the Indiana General Assembly.

(R. 525–526) (citations omitted) (emphasis in original).

The trial court further concluded that:

Under current annexation laws this Court is placed in the position of reviewing the exercise of legislative authority by a common council of a municipality. That legislative authority, ultimately derived from the Indiana Constitution, was delegated to the municipality by the Indiana General Assembly. Indiana Supreme Court decisions applying the Enrolled Act Rule, in deference to the concept of separation of powers, have refused to review and investigate alleged irregularities in procedures (albeit constitutionally required procedures, of the legislative branch of government). As indicated by case law, the Court's review commences with the enrolled act. It is that same legislative function which this Court is requested to review. Based upon constitutional concepts, this Court should commence its inquiry at the point of adoption of the Ordinance and decline to investigate and determine whether the common council properly utilized procedures which culminated in that adoption, absent allegations of fraud or mistake of fact.

. . .

Even assuming that the *Indiana Constitution* would not require extension of the Enrolled Act Rule to an Adopted Ordinance Rule, it seems that the separation of powers clause of the *Indiana Constitution, Article 3, § 1,* would at the very least, provide to the Indiana General Assembly, *cart blanc [* sic] authority, to not only delegate legislative power to municipalities, but to strictly limit the scope of judicial review of that power.

(R. 532–533) (emphasis in original).

However, notwithstanding these conclusions of the trial court, case law from this court and our supreme court has continually held that the Separation of Powers Doctrine does not apply to municipalities. *State v. Monfort,* 723 N.E.2d 407, 414 (Ind. 2000) ("[T]here is authority for the proposition that the separation of powers doctrine applies only to state government and its officers, not municipal or local governments."); *See also Mogilner v. Metropolitan Plan Comm'n,* 236 Ind. 298, 319, 140 N.E.2d 220, 230 (1957); *State ex rel. Buttz v. Marion Circuit Court,* 225 Ind. 7, 18, 72 N.E.2d 225, 230 (1947); *Sarlls v. State ex rel. Trimble,* 201 Ind. 88, 115, 166 N.E. 270, 279 (1929); *Gaskin v. Beier,* 622 N.E.2d 524, 529 (Ind.Ct.App.1993); *Willsey v. Newlon,* 161 Ind.App. 332, 333, 316 N.E.2d 390, 391 (1974); *but see Rush v. Carter,* 468 N.E.2d 236, 238 (Ind.Ct.App. 1984).[11]

---

10. *City of Hobart v. Chidester,* 596 N.E.2d 1374 (Ind.1992), *appeal after remand Chidester v. City of Hobart,* 631 N.E.2d 908 (Ind. 1994). For clarification, these decisions will hereinafter be referred to as *Chidester I* and *Chidester II* in addition to the appropriate citation.

11. We have since declined to follow the decision in *Rush* because the case law relied on by the *Rush* court for its conclusion that it is a violation of the Separate of Powers Doctrine for a county police officer to hold a position on the county council, did not concern the Separation of Powers Doctrine. *Gaskin,* 622 N.E.2d at 529.

■ Early on our supreme court explained the origin of the rule that the Separation of Powers Doctrine does not apply to local government:

Article 3 of the constitution makes the power of each department exclusive and independent of the power of either of the others. The object is to secure absolute independence in each department from the encroachment of the other. The words, "shall exercise any of the functions of another," mean that one shall not exercise any of the powers, jurisdiction, or authority of the others. It is not a function of the executive or legislative department of the state government to appoint city commissioners, and when a circuit judge appoints city commissioners he is not exercising any function of either of said departments. Neither are the city commissioners when appointed a part of either the executive or legislative department of the state government, nor do they exercise any of the functions of either of said departments.

*City of Terre Haute v. Evansville & T.H.R. Co.*, 149 Ind. 174, 181, 46 N.E. 77, 79, (1897). Likewise, here, it is not the function of the state executive or legislative departments to annex property under the Municipal Annexation and Disannexation Act, Ind.Code § 36–4–3–1, et seq., rather the annexation of property is clearly a function of a municipality.

Moreover, it has also been held that the Annexation Act does not violate the Separation of Powers Doctrine by vesting legislative authority in the courts. Our supreme court has concluded that the annexation statute:

does not attempt to vest legislative power in the courts, but simply authorizes the court to determine and adjudge whether or not certain statutory requirements necessary to sustain the legislative action of the Common Council of a city in annexing territory, when a remonstrance is filed, have been met; and such section does not violate or contra-

vene the provisions of Art. 3, § 1, of the Constitution of Indiana.

*City of Aurora v. Bryant*, 240 Ind. 492, 503, 165 N.E.2d 141, 147 (1960).

This court has also held that:

The statute does not attempt to vest legislative power in the judiciary. Its purpose is to authorize the courts to determine and adjudge whether or not the common council of a city, which is attempting to annex additional territory, has met certain statutory requirements after a remonstrance has been filed.

*Noble v. City of Warsaw*, 156 Ind.App. 618, 622, 297 N.E.2d 916, 919 (1973).

■ Thus, the case precedent from Indiana's supreme court and this court clearly establishes that the Separation of Powers Doctrine does not apply to municipalities. Accordingly, the trial court erred in relying on this doctrine to grant the City's Motion for Summary Judgment in part with regard to the aforementioned paragraphs of Count II.

The City argues however, that the trial court did not directly rely on the Separation of Powers Doctrine, but instead discussed this doctrine to explain the ability of the Indiana General Assembly to limit judicial review of legislative actions that it properly delegated to municipalities. The City contends that the annexation proceedings are a purely legislative function which can be exercised directly by the General Assembly or through a subordinate agency, the municipality. In support of this proposition, the City cites *Perry Township v. Indianapolis Power and Light Company*, 224 Ind. 59, 73, 64 N.E.2d 296, 302 (1946). In *Perry*, our supreme court noted that the "re-establishing and changing of boundaries of governmental units are legislative functions, . . ., which the Legislature may exercise directly or through its subordinate agent." *Id.* (citations omitted). Thus, the City asserts that if the annexation powers were directly exercised by the General Assembly, the Separation of Powers Doctrine would limit judicial

review of the legislative processes used by the General Assembly, and since the General Assembly has chosen to delegate annexation powers to municipalities, coupled with that delegation was a decision by the General Assembly to limit judicial review of the exercise of annexation powers. However, we find nothing in the Annexation Act that shows that the General Assembly intended to limit the judicial review of a municipalities' annexation power.

The City further asserts that the Remonstrators have failed to contest the other bases for the trial court's order granting partial summary judgment, those being that summary judgment was warranted because of the exclusive remedy allowed in remonstrances and because Remonstrators made an impermissible collateral attack on the Annexation Ordinance.

In determining that Ind.Code § 36–4–3–13 provides the exclusive remedy for remonstrance, the trial court concluded that the court's review was limited by the provisions of Section 13. The trial court stated:

> If the Indiana General Assembly had desired for the courts to review procedural irregularities in the adoption of annexation ordinances, it could have so indicated in Section 13 of the Act. Its failure to do so dictates a conclusion that this Court's review should not encompass such matters.

(R. 536). However, this court has allowed other limitations on a municipalities' annexing authority which fall outside Ind.Code § 36–4–3–13. In *Town of Porter v. Bethlehem Steel Corporation*, 451 N.E.2d 69, 71 (Ind.Ct.App.1983), this court held that a trial court can look outside the factors set forth in the predecessor to Ind.Code § 36–4–3–13 and consider additional limitations upon a municipalities' annexing authority found under the consent statute (now Ind.Code § 36–4–3–9) and the moratorium statute on subsequent annexation proceedings (now Ind.Code § 36–4–3–15).

Additionally, in the *City of Muncie v. Lowe*, 705 N.E.2d 528, 532 (Ind.Ct.App. 1999), *trans. denied*, the municipality failed to assign the annexed territory to a councilmanic district as required by Ind.Code § 36–4–3–4(f), and as a result the trial court granted a remonstrance. On appeal, this court affirmed the trial court and although this requirement (to assign the annexed territory to a councilmanic district per Ind.Code § 36–4–3–4(f)),[12] falls outside Section 13, we affirmed this additional limitation on a municipalities' annexation power.

■■■■■■ The question thus becomes, what is the appropriate scope of judicial review for the adoption of an annexation ordinance by a municipality. "[T]he power to determine when conditions exist which warrant the annexation of territory to a municipality may be legally vested in the courts." *City of Aurora*, 240 Ind. at 497, 165 N.E.2d at 144. "The courts have a duty ... to determine whether or not the Council has violated its limitations, exceeded its authority, or in any other manner had attempted to evade and circumvent the plain intent and meaning of the statutory limitations." *King v. City of Bloomington*, 239 Ind. 548, 560–561, 159 N.E.2d 563, 569 (1959). The court's duty in reviewing an annexation action has been further explained as follows: "Because the city's authority to annex territory is limited by statute, the court's duty is to determine whether the city has exceeded its authority and met the conditions imposed by the statute." *Chidester I*, 596 N.E.2d at 1377; *see also Chidester II*, 631 N.E.2d at 910.

The trial court interpreted this case law as follows:

> When the Indiana Supreme Court in its decision of *Chidester (1992)* referred to the Court's duty of determining whether the city has exceeded its authority, this Court concludes that such review is limited to a determination of whether or

12. Now Ind.Code § 36–4–3–4(g).

not the City had subject matter jurisdiction and thus whether its conduct violated any substantive (as opposed to procedural) statutory limitation imposed by the Indiana General Assembly in its delegation of authority. (R. 541).

We disagree. Under the *Town of Porter* and the *City of Muncie* decisions, it is clear that we have in the past allowed the courts to look outside the factors set forth in Ind.Code § 36–4–3–13 to determine whether a municipality has violated either the procedural or substantive requirements set forth in Indiana statutes in exercising its annexation powers. Therefore, because the Remonstrator's allegations, found in paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance, allege both procedural and substantive violations of Indiana Code by the City, the trial court has the duty to determine whether the City has exceeded its authority and violated the statutes as alleged by Remonstrators. Finally, we also conclude that the Remonstrators' complaints do not constitute a collateral attack on the annexation proceedings as found by the trial court.

Consequently, the trial court erred in granting the City's Motion for Summary Judgment as to paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance.

## II. *Fiscal Plan*

Remonstrators also argue that the trial court improperly allowed the City to amend its Fiscal Plan during trial. More specifically, the Remonstrators argue that there were a number of errors in the Fiscal Plan and the City was allowed to make significant changes to the Fiscal Plan through testimony at trial. The Remonstrators contend that the City's Annexation Ordinance should be judged by the Fiscal Plan as written at the time the Ordinance was enacted and not as amended at trial.

### A. *Standard of Review*

"At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. The court's review is limited to ensuring that the municipality has not exceeded its authority and that the statutory conditions for annexation have been satisfied." *Chidester II*, 631 N.E.2d at 910. The trial court is to " 'enter judgment on the question of the annexation according to the evidence which either party may introduce.' " *Chidester I*, 596 N.E.2d at 1378 (*citing* Ind.Code § 36–4–3–12(a)(2)). Here, the trial court issued findings of fact and conclusions of law under Trial Rule 52(A), pursuant to a request by the Remonstrators, and thus, this court may affirm the judgment under any legal theory supported by the findings. *City of Muncie*, 705 N.E.2d at 530. Normally, in reviewing a judgment such as this we would first determine whether the evidence supports the findings, and then whether the findings support the judgment, and we would reverse the judgment only when clearly erroneous. *Id.* The City asserts that this is the proper standard of review.

However, in response, Remonstrators assert that they "are neither disputing whether the findings made by the trial court are supported by evidence adduced at trial, nor whether those findings support the conclusions of law based thereon." (Remonstrators' Reply Brief, p. 32–33). Instead, Remonstrators argue that the trial court's decision is in violation of Ind.Code § 36–4–3–13(d) because it is premised upon a Fiscal Plan that was not passed by resolution of the New Castle Common Council. Thus, Remonstrators assert that they have presented a pure question of law that should be reviewed *de novo*. We agree. "The interpretation of a statute is a question of law reserved for the courts." *Wayne Metal Products Co.,*

*Inc. v. Indiana Dept. of Environmental Management*, 721 N.E.2d 316, 317 (Ind.Ct. App.1999), *trans. denied*, (citation omitted). Thus, "[w]here the issue presented on appeal is a pure question of law and there are no disputed facts, we review the matter *de novo.*" *SSD Control Technology v. Breakthrough Technologies, Inc.*, 685 N.E.2d 1136, 1137 (Ind.Ct.App.1997), *trans. denied.*

### B. *Analysis and Decision Regarding Amendment of Fiscal Plan*

In defending a proposed annexation, a municipality is required to prove that it had met the requirements set forth in Ind.Code § 36–4–3–13, a section of the Municipal Annexation and Disannexation Act. In addition to other requirements set forth in this statute, a municipality must develop "a written fiscal plan and establish a definite policy, by resolution of the legislative body, as of the date of passage of the annexation ordinance." Ind.Code § 36–4–3–13(d). Subsection (d) of this statute further requires that the written fiscal plan must show the following:

(1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.

(2) The method or methods of financing the planned services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

(3) The plan for the organization and extension of services. The plan must detail the specific services that will be provided and the dates the services will begin.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries regardless of similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation in the same manner as those services are provided to areas within the corporate boundaries, regardless of similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

*Id.*

▬▬▬ "Plainly, the statute requires the city to spell out what services it plans to provide to the annexed area." *Chidester I*, 596 N.E.2d at 1377. The statute also requires that the trial court determine whether the City's Fiscal Plan has met the conditions imposed by statute. *Id.* "[W]hen interpreting a statute the words and phrase in a statute are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself." *Hannon v. Metropolitan Development Commission*, 685 N.E.2d 1075, 1079 (Ind.Ct.App.1997). However, "[i]f the language of a statute is clear and unambiguous it is not subject to judicial interpretation." *Town of Merrillville v. Merrillville Conservancy District*, 649 N.E.2d 645, 649 (Ind.Ct.App.1995).

Here, the trial court concluded that because the burden of proof is on the City, the City was allowed to present matters outside the Fiscal Plan during the remonstrance hearing and the City was not required to include every detail in the written Fiscal Plan that may be presented at trial. However, the trial court did recog-

nize that "at some point new evidence presented at trial would constitute a complete reworking of the plan." (R. 915). Further, the trial court concluded that the Fiscal Plan could be characterized as "sloppy" and noted that it contained a number of errors. (R. 922). The trial court noted a number of errors including the Fiscal Plan's misstatement that an increase in property taxes for the property owners in the annexed areas from 8.2465% to 14.3604% was a 6% increase, certain errors in the legal descriptions of the annexed areas and city boundaries, and the recalculations performed for contiguity requirements. Additionally, the trial court found the cost for capital improvements to water services to be $78,500, $67,500 more than the amount listed in the Fiscal Plan. Also, the trial court noted errors in the revenue figures contained within the Fiscal Plan and corrected them in its Findings of Fact. Finally, although the Fiscal Plan stated that Area # 2 was being annexed under the requirements of Ind.Code § 36-4-3-13(b), during trial, the trial court allowed the City to change its theory of annexation with regard to Area # 2, to Ind.Code § 36-4-3-13(c).[13] Thus, even though the trial court found that the City failed to meet its burden of proving annexation for Area # 2 under Ind.Code § 36-4-3-13(b), the trial court found that the City had met the annexation requirements of Ind.Code § 36-4-3-13(c) for this area.

Notwithstanding the Fiscal Plan's numerous errors, the trial court concluded that "the errors are not fatal to the Fiscal Plan or to the annexation process as a whole." (R. 922). The trial court further concluded that: "The City's supplementation of the Plan at trial did not unduly prejudice Plaintiffs. The City has borne its burden of proving it met the minimum requirements set forth by the Indiana General Assembly." (R. 922).

The parties do not dispute these findings or conclusions. Rather, Remonstrators argue that the trial court missed the pertinent issue by focusing on whether or not Remonstrators were prejudiced by the supplementation of the Fiscal Plan at trial. The Remonstrators contend that the actual issue is instead whether Ind.Code § 36-4-3-13(d) was violated by the City amending its Fiscal Plan at trial. As mentioned, this statute requires that the Fiscal Plan be in writing, be passed by resolution of the municipality's legislative body, be passed as of the date of passage of the annexation ordinance, and set forth the matters listed in subsections (1) – (6), as above stated. *Id.*

Remonstrators assert that by allowing the City to amend the Fiscal Plan through testimony at trial, Ind.Code § 36-4-3-13(d) was violated because the statute requires that the Fiscal Plan be developed and passed by resolution as of the date of the passage of the annexation ordinance. Thus, Remonstrators contend that by allowing the City to change the Fiscal Plan at trial, the Fiscal Plan as amended was not passed by the New Castle Common Council prior to the date of the passage of the annexation ordinance or at any time. Further, the Remonstrators argue that if the City is allowed to change the terms of the Fiscal Plan at trial without the Common Council's approval, and the services promised at trial are not provided, Remonstrators will have no recourse to enforce the amended Fiscal Plan. Since the changes in the Fiscal Plan are not in writing and have not been approved by the New Castle Common Council pursuant to the requirements of Ind.Code § 36-4-3-13(d), the Remonstrators would not be able to seek disannexation for the City's failure to provide services.

In response, the City asserts that a critical distinction has to be made between services promised in a fiscal plan and the cost estimate listed for the promised services. The City argues that the statute only requires a "cost estimate[ ] of planned services to be furnished to the territory to

13.   See footnote 8.

be annexed." Ind.Code § 36–4–3–13(d)(1). The City also contends that to require a municipality to list exact figures would prevent municipalities from re-examining cost estimates listed in a fiscal plan due to inflation, technological changes, and changes in standards between the time the fiscal plan is prepared and the time the annexation is completed. Further, the City asserts that the written Fiscal Plan commits it to providing the promised services regardless of whether the estimated costs change over time.

In reply, the Remonstrators contend that we should find a distinction between cost estimates and totally erroneous figures. Remonstrators agree that it would be reasonable to allow a municipality to make minor changes to cost estimates based on the above factors cited by the City; however, they argue that herein the City did not make changes to the cost estimates based on these concerns, but instead totally reworked certain figures because they were completely erroneous in the original Fiscal Plan. Remonstrators assert that if we allow a municipality to change the figures set forth in a fiscal plan by claiming that they were only estimates, then a city can list any figure as an "estimate" and merely correct it later, in contravention of the purposes of a written fiscal plan. Furthermore, the Remonstrators reply that if the City has estimated that it will spend $0.00 on a particular service, then the City is not committed to providing that service.

Our supreme court has addressed the purposes behind requiring a municipality to prepare a written fiscal plan when attempting to annex contiguous property, as follows:

We assess the legislature's requirement of a written fiscal plan as having three purposes. First, the publication of a written plan permits landowners to make an intelligent decision about whether to accept annexation or remonstrate. Second, requiring a written plan makes the opportunity for remonstrance

and judicial review more realistic. As a practical matter, more than vague promises are needed for a court to test a city's ability to provide like services to the annexed territory. Third, a fiscal plan needs to be in writing to protect the right of landowners to institute proceedings to force an annexing city to provide the services promised under the plan. If a written plan were not required, a landowner could be faced with attempting to establish the failure of a plan whose existence he might be incapable of proving in the first place. Therefore, the plan must be sufficiently specific to enable the landowners to determine whether the services promised have been provided.

*Chidester I,* 596 N.E.2d at 1377–1378 (citations omitted).

▇▇▇▇ With regard to the third purpose set forth in *Chidester I,* 596 N.E.2d at 1378, the Remonstrators also rely on *Mahuron v. City of Salem,* 120 Ind.App. 247, 91 N.E.2d 648 (1950). That decision concerned a remonstrance hearing wherein a city attorney attempted to stipulate that a certain person's property would not be part of the annexed territory. On appeal, we rejected the stipulation, concluding that: "The stipulation by the City Attorney on behalf of the City could no more change the provisions of a duly adopted ordinance than could an Attorney General by stipulations on behalf of the State modify or vary the provisions of a statute duly enacted by the Legislature." *Id.* at 251, 91 N.E.2d at 649. In that case, the city attorney also requested that the trial court consider a better description for the annexed property which was different from the description of the land in the original annexation ordinance. *Id.* This court stated that this request:

did not vest in the court any power to order an annexation of land of a different description and such statement was properly disregarded by the court. Such statements and admissions on behalf of the City could only be considered

as an ineffectual attempt to amend such annexation ordinance in the Circuit Court which could not be done...

*Id.* Furthermore, "an ordinance can be amended or repealed only by another ordinance enacted with like formality as the original ordinance." *Chicago, I. & L. Ry. Co. v. Town of Salem,* 166 Ind. 71, 76 N.E. 631, 633 (1906).

Although the trial court noted that this case presented a "close question," (R. 921), the trial court concluded that "the Fiscal Plan as supplemented at trial is not so seriously defective as to thwart the purposes announced under Hobart v. Chidester." (R. 920). We disagree. Although, all proof of the City's ability to provide like services do not have to be set out in the written fiscal plan, *Chidester I,* 596 N.E.2d at 1378, here, we find that the numerous changes made to the Fiscal Plan at the remonstrance hearing violated the purpose of the statute as explained in *Chidester I,* 596 N.E.2d at 1377–1378. We are especially concerned with the third purpose set forth in *Chidester I,* the need to protect the Remonstrator's ability to institute proceedings to force the City to provide the services promised under the plan. For example, if the City fails to improve the water services by spending $78,500 on capital improvements, the Remonstrators will have little recourse to enforce this promise since it was made at the hearing and not in the written Fiscal Plan. Thus, because this written Fiscal Plan was significantly changed after its passage, and after the passage of the Annexation Ordinance by the New Castle Common Council, we find that allowing this Fiscal Plan to be significantly amended at the remonstrance hearing violates Ind.Code § 36–4–3–13(d) and the principles set forth in *Chidester I.*

Consequently, we remand this matter to the trial court for a new remonstrance hearing based on the original written Fiscal Plan as passed by resolution of the New Castle Common Council.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting partial summary judgment as to paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance. Further, we find that the trial court improperly allowed the City to make significant changes to its Fiscal Plan during the remonstrance hearing. Therefore, we remand this matter to the trial court for a new remonstrance hearing based on the original written Fiscal Plan as passed by resolution of the New Castle Common Council and to additionally address the allegations raised in paragraphs six (6) through ten (10) and twelve (12) through fourteen (14) of Count II of Remonstrator's Third Amended Petition for Declaratory Judgment and Remonstrance.

Reversed and remanded with instructions.

BAKER, J., and KIRSCH, J., concur.